# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | | |
|---|---|---|
| G&S METAL CONSULTANTS, INC., | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 3:09-CV-493-JD-PRC |
| | ) | |
| CONTINENTAL CASUALTY COMPANY, | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on Plaintiff G&S Metal Consultants' Motion for Leave to Disclose Additional Expert Testimony [DE 113], filed by Plaintiff G&S Metal Consultants, Inc. ("G&S") on March 1, 2013. The question before the Court is whether G&S should be allowed to disclose a newly retained expert witness who will provide an alternative measure of damages in the form of an "appraisal measure of damages" two years after the deadline for expert disclosures, when G&S had previously pursued a measure of damages based on "ongoing business interruption loss" and had timely disclosed an expert thereon. Although the Court finds that the late disclosure of the new expert is not justified, the disclosure is nevertheless harmless under all the circumstances. Therefore, the motion is granted and discovery is reopened for the purpose of allowing Defendant Continental Casualty Company ("Continental") to conduct the necessary fact and expert discovery related to this expert disclosure as well as to retain its own rebuttal expert, if so desired.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff G&S, an aluminum processing and recycling business, was insured for property damage and business interruption loss through Continental. In November 2007, an explosion of a gas furnace at G&S's plant in Manchester, Georgia, caused property damage that allegedly led to the shut down of the plant and business losses. Continental paid approximately $2 million to G&S

under its insurance policy. However, G&S filed a Complaint against Continental in the U.S. Bankruptcy Court for the Northern District of Indiana on July 15, 2009, alleging breach of contract, promissory estoppel, and bad faith claims handling. Continental filed an Answer on August 14, 2009. This matter was withdrawn from the Bankruptcy Court by Order on October 19, 2009, as amended on October 22, 2009.

On April 1, 2010, the Court entered a scheduling order, setting a deadline for G&S to serve its expert disclosures on or before January 31, 2011, a deadline for Continental's expert disclosures of February 23, 2011, and a deadline for the close of all discovery for April 22, 2011. On January 28, 2011, the Court extended the deadlines to March 17, 2011, April 18, 2011, and May 23, 2011, respectively.

On March 21, 2011, G&S disclosed seven potential experts, all of whom were disclosed as witnesses who would potentially provide testimony concerning G&S's "business interruption loss" measure of damages. Six of them, including G&S's owners, were not designated as retained experts but as persons who nonetheless "may testify regarding aluminum market conditions before and during the relevant time periods of G&S's business interruption loss." G&S also disclosed one retained expert, certified public accountant Keith W. Kinsel, and indicated that he "will be testifying as to the business interruption and extra expense losses suffered by [G&S]." Mr. Kinsel's report purported to "quantify the economic damages to [G&S]'s operation resulting from the incident of November 29, 2007." Mr. Kinsel's report calculated G&S's business interruption loss to be between $16,120,608 and $24,650,727 as of February 2011, with the largest portion of the business interruption loss concerning the period of total suspension, which began with the complete cessation of operations at the Manchester plant on May 1, 2008. Mr. Kinsel opined that the business

interruption losses have continued to accrue at a rate of between $384,337 and $635,223 per month. Thus, at the time this motion was filed, G&S estimates that their total business interruption loss was between $24,334,241 and $38,885,624.

The March 17, 2011 deadline for G&S to serve its expert disclosures has not been extended, and G&S has not sought an extension of that deadline.

Subsequently, Continental timely made its own expert disclosures, including an accounting expert, Howard Zandman, who provided a rebuttal to Mr. Kinsel's "business interruption loss" measure of damages. Mr. Zandman relied on the documents that G&S had produced to Continental as of April 2011, along with documents that Continental and G&S had obtained by issuing third party subpoenas.

In his September 11, 2011 deposition, G&S's Scott Galley testified about the existence of documents that he had turned over to G&S's lawyers; however, Continental never received them nor were they contained on G&S's privilege log or subject to any objection for privilege. Several of these documents revealed information concerning the permanent shut down of the Manchester facility in April 2008 and G&S's lost profits between November 2007 and April 2008 when it was forced to use a less-efficient gas furnace following the explosion. Continental then filed a motion to compel the production of this evidence, which was granted on December 7, 2011. G&S subsequently disclosed approximately 300,000 documents dating back to 2003. These documents were reviewed by G&S and submitted to Continental in increments from January 2012 until July 2012, while a clarification of the privilege log was provided in October 2012. When Mr. Zandman issued his report in April 2011, he had not had an opportunity to review these documents.

3

On June 28, 2012, while counsel for the parties were attending the deposition of a witness, counsel for G&S mentioned to counsel for Continental that G&S wished to disclose an additional expert witness, Daniel M. Rosio, CPA, of the Indianapolis accounting firm of Katz Sapper & Miller. The following day, counsel for Continental wrote an email to counsel for G&S stating that Continental did not agree to G&S's attempt to use Mr. Rosio; that until the previous day, Continental did not know that G&S planned to designate any expert other than Mr. Kinsel; and that the deadline for all expert reports had passed more than a year earlier. On July 18, 2012, counsel for G&S wrote an email to counsel for Continental, indicating, among other things, that he owed a response on Continental's objection to G&S using Mr. Rosio as an expert. On August 3, 2012, counsel for G&S sent another email indicating that he would follow up in the following days regarding G&S's use of Mr. Rosio. However, G&S did not follow up or otherwise communicate with Continental regarding Mr. Rosio.

On October 2, 2012, Continental filed a Motion to Dismiss or for Other Discovery Sanctions related to the disclosure of the 300,000 documents in 2012. Judge Jon DeGuilio referred the motion to Magistrate Judge Christopher Nuechterlein for a report and recommendation. On December 4, 2012, Judge Nuechterlein issued a Report and Recommendation, recommending that the motion be denied.

On December 21, 2012, Continental filed an Objection to the Report and Recommendation. The same day, Continental also filed a Motion for Leave to File Amended Answer, to which G&S objected.

At a January 29, 2013 status conference, G&S's counsel mentioned that G&S may wish to formally disclose Mr. Rosio as an expert, and Continental indicated that it would object if G&S did

4

so. At the conference, G&S did not formally seek leave to disclose Mr. Rosio as an expert or otherwise provide guidance as to if and when it intended to do so.

On February 1, 2013, Magistrate Judge Nuechterlein denied the Motion for Leave to File Amended Answer. The Order closed fact discovery and extended expert discovery to May 1, 2013. On February 19, 2013, Continental filed a Motion for Review of that Order.

On March 1, 2013, G&S filed the instant motion. Continental filed a response on March 18, 2013, and G&S filed a reply on April 4, 2013.

A judicial settlement conference was held on April 26, 2013. No settlement was reached. That same date, this matter was reassigned to the undersigned Magistrate Judge.

On September 10, 2013, Judge DeGuilio issued an Order vacating the February 1, 2013 Order on the Motion for Leave to File an Amended Answer and directing the undersigned Magistrate Judge to issue a new ruling on the motion. The same date, Judge DeGuilio issued an order adopting in part and modifying in part the December 4, 2012 Report and Recommendation on Continental's Motion to Dismiss or for Other Discovery Sanctions, denying the request for sanctions but reopening discovery for a period of time to be determined by the undersigned Magistrate Judge "to allow Continental to question previously deposed witnesses or others whom Continental did not have an opportunity to depose in the first instance, as well as to allow Continental to propound other written discovery, but only with regard to matters contained in the subsequent disclosures." (9/10/2013 Opinion and Order 10).

On November 12, 2013, this Court granted Continental's revived Motion to Amend Answer, and Continental filed the Amended Answer and Counterclaims on November 14, 2013.

This matter is set for an in-person scheduling conference on November 21, 2013, before the undersigned Magistrate Judge for the purpose of defining the scope of allowable discovery resulting from Judge DeGuilio's September 13, 2013 Order as well as resulting from the filing of Continental's Amended Answer and Counterclaims.

## ANALYSIS

In the instant motion, Plaintiff G&S seeks leave of Court to disclose a second expert, Daniel M. Rosio, CPA, of the Indianapolis accounting firm of Katz Sapper & Miller, concerning the value of G&S Metal Consultants, Inc. prior to the November 2007 fire at the Manchester plant and concerning the value of damages in this case. Mr. Rosio's report is 75-pages long and opines that the fair market value of G&S on September 30, 2007, was $33,025,000.

Federal Rule of Civil Procedure 26(a)(2)(D) directs each party to disclose its expert opinion reports "at the times and in the sequence directed by the court." Fed. R. Civ. P. 26(a)(2)(D). The reports must contain, among a list of other things, "a complete statement of all opinions to be expressed and the basis and reasons therefore," and "the data or other information considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i), (ii); *see also Jenkins v. Bartlett*, 487 F.3d 482, 487 (7th Cir. 2007); *Keach v. U.S. Tr. Co.*, 419 F.3d 626, 639 (7th Cir. 2005). The failure to comply with Rule 26(a)(2)'s requirements results in the offending party being precluded from introducing the expert witness's testimony as "evidence on a motion, at a hearing, or at a trial." Fed. R. Civ. P. 37(c)(1); *Jenkins*, 487 F.3d at 488. This exclusion is "automatic and mandatory" unless the offending party can establish "that its violation of Rule 26(a)(2) was either justified or harmless." *Keach*, 419 F.3d at 639 (quoting *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)); *see also Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012); Fed. R. Civ. P. 37(c)(1).

G&S's disclosure of Mr. Rosio as a damages expert, two years after the disclosure deadline and without explanation, is not justified; however, under all of the circumstances, the Court finds the late disclosure to be harmless. In support of its position that the late disclosure is justified, G&S contends that Mr. Rosio's report will aid the fact-finder to understand, analyze, and summarize the vast amounts of financial and operational documents that are involved in this case and will provide an understandable basis for determining the damages arising from G&S's loss of its business. G&S further explains that Mr. Rosio's report will provide an alternate measure of damages to G&S's ongoing business interruption loss, so as not to exceed the fair market value of G&S's business, which G&S claims was ultimately lost because of Continental's handling of the claim. G&S notes that, based on the calculations of their original expert, Mr. Kinsel, the ongoing business interruption loss was between $24,334,241 and $38,885,624 as of March 1, 2013, which is approaching Mr. Rosio's estimate of the entire value of G&S as $33,025,000 just prior to the November 2007 explosion at the Manchester plant.

G&S misunderstands what must be "justified" under this analysis. It is not the usefulness of the late-disclosed expert's opinion but rather whether the party's failure to timely disclose that opinion is justified. Despite G&S's attempts to rely on the extension of the expert *discovery* deadline to May 31, 2013, the expert disclosure deadline was March 17, 2011. That deadline was never extended, and G&S never sought its extension. At the time of its March 21, 2011 expert disclosures, G&S did not disclose any experts, retained or otherwise, regarding an appraisal measure of damages. Nor did G&S disclose any experts, retained or otherwise, concerning any other issue in this case. Thus, the disclosure of Mr. Rosio and his report on March 1, 2013, was untimely.

G&S offers no explanation for why it did not disclose Mr. Rosio by that original deadline. In its response brief, Continental contends that Mr. Rosio was only retained in June 2012 once G&S realized that the additional 300,000 pages of discovery disclosed by G&S beginning in January 2012 demonstrated that Mr. Kinsel's business interruption loss theory of damages was untenable. G&S also contends that this late disclosure is justified by the significant amount of fact discovery that has occurred since the original expert disclosure deadline; however, the data upon which Mr. Rosio relied for his report was always within the custody and control of G&S (especially given that it is largely based on discussions with "company advisors" for G&S), and G&S has not identified any specific discovery obtained or developed after March 2011 that was used as a basis for Mr. Rosio's report.

Nevertheless, at this point in the litigation, with discovery having recently been reopened on several issues, the late disclosure is harmless. This may not have been so on March , 2013, when the motion was filed, but circumstances have recently and significantly changed. The Court considers four factors bearing on whether the subsequent disclosure of a new expert opinion is harmless: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Tribble*, 670 F.3d at 760.

First, Continental has been both surprised and prejudiced, contrary to the purpose of Rule 26(a)(2), as quoted by G&S in its motion: "'The expert witness discovery rules are designed to aid the court in its fact-finding mission by allowing both sides to prepare their case adequately and efficiently and to prevent the tactic of surprise from affecting the outcome of the case.'" *BASF Corp. v. Aristo, Inc.*, 2:07 CV 222 PPS, 2012 WL 2159252, at *1 (N.D. Ind. June 12, 2012) (quoting

*Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 138 F. Supp. 2d 1088, 1093-94 (N.D.Ill. 2001) (citing *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000))); *see also* (Pl. Br. 7); Fed. R. Civ. P. 26(a)(2) (advisory committee's notes). Because G&S disclosed only one damages expert by the March 2011 deadline, Continental was entitled to rely on the opinions of that expert as G&S's basis for calculating its damages.

Nor does counsel for G&S's mention of Mr. Rosio's report at the deposition on June 28, 2012, mitigate any surprise or prejudice to Continental. G&S twice promised to follow up on Continental's informal objection to the disclosure of Mr. Rosio but did not. After the second of the communications in August 2012, G&S did not follow up as promised or revisit the issue with Continental. G&S did not seek leave to formally disclose Mr. Rosio as an expert nor did G&S inform Continental that it intended to do so notwithstanding Continental's objection. G&S did not provide Continental with a copy of Mr. Rosio's report, did not provide Continental with a list of sources upon which Mr. Rosio relied, and did not provide even a brief statement of the subject matter or anticipated conclusions of the report. Thus, Continental was unable to investigate and conduct discovery on Mr. Rosio's sources and was unable to obtain its own rebuttal expert.

G&S is incorrect in its assertion that Continental is not prejudiced because Continental's expert, Mr. Zandman, hired as a rebuttal expert to Mr. Kinsel's report, evaluated many of the same factors that Mr. Rosio uses to determine the company's value. Mr. Rosio's opinion is based on an entirely different measure of damages than the "business interruption loss" measure asserted by Mr. Kinsel and responded to by Mr. Zandman; Mr. Rosio relies on sources that have never been produced to Continental; and Continental has not had an opportunity to probe this evidence in fact discovery.

However, as to the second and third factors, Continental will be able to cure the prejudice and the timely setting of a trial date will not be significantly disrupted. As a result of the several pending motions (including motions for summary judgment not mentioned in the procedural background that Judge DeGuilio denied without prejudice as premature), a trial date has not yet been set in this matter. Although the Court is greatly interested in the expeditious resolution of this matter that has been pending for over four years, the Court has already reopened discovery for certain limited purposes, which will extend the time by which a trial date can be set. As noted above, among the many ways in which Continental asserts that it is prejudiced, Continental contends that Mr. Rosio's report relies primarily on sources that have never been provided to Continental and that his conclusions are based on many "dubious assumptions that Continental had no opportunity to probe in fact discovery." (Def. Br. 2). Continental also asserts that, throughout fact discovery, G&S proceeded on a theory of damages based on unsupported statements from G&S's ownership about its alleged "business interruption loss." Thus, in reopening discovery based on the disclosure of Mr. Rosio's report, the Court will allow additional expert *and* fact discovery to be conducted regarding Mr. Rosio's report and its underpinnings and will set a new deadline for Continental to disclose a rebuttal expert, if so desired.

Finally, the Court must consider the bad faith or willfulness involved in G&S not disclosing Mr. Rosio as an expert at an earlier date. G&S has failed to provide any explanation for why it did not disclose Mr. Rosio by the deadline if G&S has, in fact, been pursuing this business appraisal measure of damages as a form of consequential damage from the outset, as it contends in the instant briefing. And Continental asserts that the motive for G&S's late disclosure is that G&S is concerned about the viability of the opinion of its original damages expert, Mr. Kinsel, in light of subsequently

disclosed evidence. Nevertheless, the Court does not have evidence before it to make a finding of bad faith or willfulness. Again, Continental will be given considerable latitude in its ability to conduct discovery necessary to rebut Mr. Rosio's report.

As an additional matter, the Court acknowledges Continental's concern that common to both Mr. Kinsel's and Mr. Rosio's reports is "a transparent attempt to inflate the amount of [G&S]'s alleged damages by relying on self-serving statements of [G&S]'s owners rather than its own business records and financial documents." (Def. Resp. 1). Although both parties argue the validity of Mr. Kinsel's and Mr. Rosio's opinions and the facts and data upon which they rely to form those opinions, that issue is not presently before the Court and may be properly raised in a *Daubert* motion challenging the admissibility of the opinion, as recognized by Continental in footnote 2 of its response brief.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Plaintiff G&S Metal Consultants' Motion for Leave to Disclose Additional Expert Testimony [DE 113]. The Court **ORDERS** that discovery is reopened for the purpose of allowing Defendant Continental Casualty Company ("Continental") to conduct the necessary fact and expert discovery related to this disclosure as well as retain its own rebuttal expert, if so desired. The Court will set the necessary deadlines at the November 21, 2013 scheduling conference.

Given that discovery has now been reopened for three separate purposes: (1) additional discovery by Continental related to G&S's 2012 discovery disclosures, as ordered by Judge DeGuilio on September 10, 2013; (2) discovery by both parties related to Continental's Amended Answer and Counterclaims; and (3) expert and fact discovery resulting from the disclosure of Mr.

Rosio's report, the Court **ORDERS** the parties to confer in advance of the November 21, 2013 scheduling conference and **FILE** by **12:00 p.m. noon on November 20, 2013**, a joint proposed discovery plan, noting briefly any disagreements, if necessary.

SO ORDERED this 15th day of November, 2013.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record