UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| G&S METAL CONSULTANTS, INC., ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 3:09-CV-493-JD-PRC |
| ) | |
| CONTINENTAL CASUALTY COMPANY, ) | |
| Defendant. ) | |

**OPINION AND ORDER**

This matter is before the Court on Defendant's Motion to Compel Production of Withheld Documents [DE 174], filed by Defendant Continental Casualty Company ("Continental") on December 3, 2013. Plaintiff G&S Metal Consultants, Inc. ("G&S") filed a response on January 3, 2014, and Continental filed a reply on January 13, 2014.

Continental initially served G&S with a Request for Production on November 10, 2010, seeking documents in G&S's possession relating to its claims and Continental's defenses. On July 7, 2012, G&S provided Continental with a copy of a privilege log identifying documents responsive to Continental's discovery requests that G&S was withholding. Among the documents that G&S withheld based on the attorney-client privilege are numerous documents that purportedly reflect communications between G&S and its attorneys concerning various subject matters, including "financial strategy," "negotiations with Manchester," "acquisitions for GA facility," "Star Leasing," "status of various legal and litigation matters," "building issues," "general business practice," "business strategy," "Transwheel," "international business opportunity," "possible real estate purchase," "Periculum contract," "EIP loan documents," "audit report," "sale of the company," and others. Also listed on the privilege log were documents identified by G&S as attorney-client communications concerning the "Manchester explosion" and/or "insurance claim."

On August 3, 2012, the parties entered into a non-waiver agreement with respect to certain additional documents identified on G&M's privilege log and that Continental asked G&M to produce. The agreement provided that G&M did not waive any privilege by producing to Continental certain designated documents pursuant to the agreement and after it was executed. The agreement also provided that Continental did not waive any argument that the attorney-client privilege had "been waived for reasons other than the production subject to this non-waiver agreement." After entering into the agreement, G&S produced certain additional documents to Continental, subject to the agreement; those documents are not at issue in the instant motion.

G&S subsequently relied on two attorney-client communications concerning the "Manchester explosion matters" and "insurance claim" to support its Motion for Partial Summary Judgment. One of the documents had been produced to Continental in July 2012, prior to the execution of the non-waiver agreement, and the other had not been produced to Continental at all.

Continental contends generally that G&S's intentional use of attorney-client communications to support its motion for summary judgment dictates that, out of fairness, G&S must disclose the other communications concerning the same subject matter. On September 19, 2013, Continental sent a letter to G&S as an effort to satisfy the requirements of Northern District of Indiana Local Rule 37-1 that the parties confer in an attempt to resolve a discovery dispute before seeking the assistance of the Court. The letter cited no law, did not discuss the content of the documents it believed constituted a waiver of the attorney-client privilege as to other documents, and did not explain why fairness required the production of other privileged documents regarding the same subject matter.

G&S's position is that the two documents at issue were exhibits to its summary judgment memorandum offered solely for the purpose of establishing the time line of the interactions between

the parties, and G&S argues that Continental has not demonstrated how these emails create a misleading or incomplete impression about any substantive issue in this case that would require waiver of the attorney-client privilege pursuant to Federal Rule of Evidence 502(a) as to other documents concerning the same subject matter. G&S took the same position in its October 25, 2013 written response to Continental's letter, contending that "[t]here is simply no way that G&S's limited use of either document complained of could be construed as selective, misleading or unfair. Thus, CNA's claim of a broader waiver by G&S is without merit." (Mot., Exh. D, p. 4, docket entry 174-4).[1] Continental sent a follow-up letter on November 11, 2013, responding to both arguments generally but again providing no specific analysis of the two documents or why fairness required disclosure of the two documents in the instant case.

Federal Rule of Evidence 502(a), which was enacted in 2008, is titled "Disclosure Made in a Federal Proceeding or to a Federal Office or Agency; Scope of a Waiver," and provides that,

> [w]hen the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:
>
> **(1)** the waiver is intentional;
>
> **(2)** the disclosed and undisclosed communications or information concern the same subject matter; and
>
> **(3)** they ought in fairness to be considered together.

Fed. R. Evid. 502(a).

The Advisory Committee's note on Rule 502(a) explains that "subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation *in*

---

[1] G&S also asserted in its communication that one of the documents was subject to the non-waiver agreement.

*a selective, misleading and unfair manner.*" *Id.* (2007 advisory committee note, revised Nov. 28, 2007) (emphasis added). The note goes on to explain that "[t]he language concerning subject matter waiver—'ought in fairness'—is taken from Rule 106, because the animating principle is the same. Under both Rules, a party that makes a selective, misleading presentation that is unfair to the adversary opens itself to a more complete and accurate presentation." *Id.* "The idea is to *limit* subject matter waiver to situations in which the privilege holder seeks to use the disclosed material for advantage in the litigation but to invoke the privilege to deny its adversary access to additional materials that could provide an important context for proper understanding of the privileged materials." *Johnson Outdoors, Inc. v. Gen. Star Indem. Co.*, No, 05-C-522, 2011 WL 196825, at *2 (E.D. Wis. Jan. 19, 2011) (emphasis added) (quoting *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2010 WL 4622527, at *29 (N.D. Ill. Nov. 4, 2010) (quoting Charles Alan Wright, et al., 8 Fed. Practice and Procedure § 2016.2 (3d ed. 1995, Supp. 2010)).

As to the rule's first requirement, the parties dispute whether the waiver was intentional. As to the second requirement, it appears that the two disclosed documents generally concern the same subject matter as other documents withheld by G&S subject to the attorney-client privilege, namely those documents listed under the categories of "Manchester explosion" and the "insurance claim."

However, Continental has not demonstrated, or even attempted to demonstrate, that fairness dictates disclosure of other documents concerning the same subject matter for which G&S continues to assert the attorney-client privilege. Continental does not attempt to show in its opening motion that G&S's use of the two documents was "in a selective, misleading and unfair manner" or that G&S cited the two documents to G&S's advantage in a way that necessitates additional disclosure to fully understand the two documents' meaning.

4

In fact, in its motion, Continental does not identify the two documents as emails, does not discuss who sent them, does not identify the content of the emails, and does not explain the purpose for which G&S used the two emails in its summary judgment memorandum. Continental does not acknowledge in its opening motion that the two emails were offered by G&S to establish the time line of events that form the basis of this litigation rather than to support any substantive argument.

Both emails are from December 2007, shortly after the November 29, 2007 explosion, sent by G&S personnel to its counsel and others regarding the fact of the meetings with Continental's personnel. The first email, dated December 4, 2007, was cited in support of the statement in G&S's summary judgment memorandum that "[a] Continental representative met with G&S personnel to discuss the claim." (G&S SJ Mem., docket entry 145, p. 4). The second email, dated December 14, 2007, was cited in support of the statement in the memorandum that "[m]ore than two weeks after the explosion, Continental adjuster Joseph Nalepa first tours the plant site." *Id*. at 4. These emails are not cited or discussed again in G&S's summary judgment memorandum.

Although Continental cites case law addressing Rule 502 and general principles regarding waiver and fairness, Continental offers no specific analysis of the two emails disclosed by G&S or why fairness dictates waiver of the attorney-client privilege as to other documents in this case as a result of the disclosure of the two emails. Rather, Continental offers "examples" and broad assertions unconnected to the facts of the case. First, in paragraph 14, Continental asserts the general principle that allowing selective disclosure of documents is unfair because it allows a party to "foster a misleading or incomplete impression about the advice it received from its attorney," and then gives a general example:

> For example, a party to insurance coverage litigation generally cannot submit into evidence the fact that it received the advice of counsel during the claims

5

> process—and thereby seek to benefit from the implication that the party acted reasonably and according to the law—without also disclosing those communications that fully and fairly reflect the attorney's advice about the matter disclosed.

(Mot., ¶ 14, p. 4, docket entry 174). Continental does not tie this example to the instant case or attempt to show that this is the purpose for which G&S cited the two emails. A few paragraphs later after reviewing the general principles of subject matter waiver of the attorney-client privilege, Continental again broadly asserts in the motion that G&S's disclosure of the documents concerning the same subject matter creates "an increased likelihood that [G&S] could create a one-sided or misleading characterization of the attorney advice." (Mot., ¶ 18, p. 6-7, docket entry 174). Yet, nowhere in the motion does Continental identify the "subject matter" of the emails, much less offer any detail or explanation of how G&S has created or might create a misleading argument based on the documents. Continental does not even show what "attorney advice" is purportedly offered in the emails. There is none.

Although G&S's response brief asserts that Continental failed to show how G&S's use of the emails creates a misleading or incomplete impression about any issue in this case, Continental's reply brief still provides no fact-specific "fairness" argument. In the reply, Continental first summarizes its position that G&S's alleged "dishonesty in presenting its insurance claim is a key issue in this case; its own documents demonstrate that it submitted a knowingly inflated estimate for building repairs, lied to Continental about the reasons that its facility had closed, and manipulated data in an Excel spreadsheet to falsify its melt recoveries." (Reply, p. 4, docket entry 180). Thus, Continental argues that G&S cannot rely on "evidence that it submitted its insurance claim under the advice of counsel–and thereby create the inference that it acted reasonably and according to the law–without also disclosing those communications that fully and fairly reflect the

6

attorney's advice." *Id.* Again, however, Continental offers no support for this characterization that G&S is relying on the two emails at issue to show that G&S "submitted the insurance claim under the advice of counsel" or that it acted "reasonably and according to the law." Continental again does not analyze the content of the emails, G&S's use of the emails, or G&S's argument in the summary judgment memorandum. Nowhere does G&S's summary judgment memorandum assert that it acted reasonably and according to law because it submitted its insurance claim under the advice of counsel, and G&S does not rely on the emails in its summary judgment memorandum for anything other than to establish the time line of communications.[2]

Because fairness does not require that the documents be considered together, the Court denies the motion. Thus, the Court need not consider G&S's other arguments in support of denying the motion. Nothing in this order should be construed as precluding Continental from asserting subject matter waiver under Rule 502(a) in a properly supported motion for any other use of the two emails or other privileged material by G&S in this litigation.

In its response brief, G&S requests that the Court award it attorneys fees incurred in responding to the instant motion, which it asserts its frivolous. Federal Rule of Civil Procedure 37(a)(5)(B) provides:

> If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially

---

[2] Although the court in *Appleton Papers, Inc. v. EPA* considered the work product doctrine under Rule 502(a), and not the attorney-client privilege to which waiver is applied more broadly, its reasoning is nevertheless instructive. 702 F.3d 1018, 1025 (7th Cir. 2012). In finding that the work product privilege was not waived under Rule 502(a) by the intentional disclosure of some documents, the court explained that the "government did not 'expose[] the enchanted nature' of the information" being sought by the opposing party. *Id*. Similarly, the two emails in this case did not reveal any substantive matters or attorney advice that G&S might use to its advantage.

justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(B).[3] The Court finds that the instant motion was frivolous and was filed as an attempt to obtain waiver of the attorney-client privilege when Continental offers no case-specific argument in support of the third required element of 502(a). Continental made no fact-based argument that disclosure is required because the disclosed emails and the documents for which the privilege remains asserted "ought in fairness to be considered together." Fed. R. Evid. 502(a)(3). Even after G&S identified this deficiency in its response brief, Continental failed to come forward with any case-specific analysis in its reply. Continental has not shown that its motion was substantially justified, and an award of expenses to G&S for responding to the instant motion is appropriate and just.

Based on the foregoing, the Court hereby **DENIES** Defendant's Motion to Compel Production of Withheld Documents [DE 174]. The Court **ORDERS** Defendant Continental Casualty Company to pay Plaintiff G&S Metal Consultants, Inc's reasonable expenses incurred in responding to this motion, including attorney fees. The Court **ORDERS** Plaintiff G&S Metal Consultants, Inc. to file a verified statement of expenses with supporting documentation on or before **February 3, 2014**.

SO ORDERED this 15th day of January, 2014.

s/ Paul R. Cherry  
MAGISTRATE JUDGE PAUL R. CHERRY  
UNITED STATES DISTRICT COURT

cc: All counsel of record

---

[3] G&S cites the prior version of this rule, which was Federal Rule of Civil Procedure 37(a)(4)(B).