# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | | |
|---|---|---|
| G&S METAL CONSULTANTS, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 3:09-CV-493-JD-PRC |
| | ) | |
| CONTINENTAL CASUALTY COMPANY, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Compel Defendant to Answer Discovery and Produce Witnesses for Deposition [DE 187], filed by Plaintiff G&S Metal Consultants, Inc. ("G&S") on May 16, 2014. Defendant Continental Casualty Company ("Continental") filed a response on June 6, 2014, and G&S filed a reply on June 16, 2014.

## BACKGROUND

G&S filed this lawsuit against Continental on August 19, 2009, alleging breach of contract and bad faith. G&S was in the business of processing aluminum scrap at facilities located in Indiana and Georgia. In the Complaint, G&S alleges that a November 29, 2007 steam explosion at its Georgia facility "shut the plant down and caused severe property damage and business interruption losses" that went unreimbursed by Continental under a property insurance policy issued to G&S.

The parties conducted discovery over the next two years. Among the materials Continental provided to G&S were copies of documents that G&S itself had originally sent to Continental during the claim submission process. After Continental responded to G&S's written discovery, G&S took the depositions of the claim analyst that Continental had assigned to handle the loss (Joseph Nalepa), his supervisor (Jack Conard), Continental's Rule 30(b)(6) witnesses on issues concerning claim

handling and bad faith, and two individuals from the forensic accounting firm that had assisted Continental with certain aspects of the loss evaluation.

In December 2011, the Court granted a Motion to Compel filed by Continental. As a result, from January 2012 through October 2012, G&S disclosed approximately 300,000 documents dating back to 2003 that had not been previously provided to Continental. Based on those documents, Continental sought leave to file an Amended Answer to assert additional affirmative defenses and a counterclaim based on alleged misconduct by G&S during the claims process. The Court granted the motion.

On November 12, 2013, Continental filed the Amended Answer, pleading four additional affirmative defenses–fraud by G&S, G&S's failure to comply with Continental Policy's provision requiring Continental to examine and make copies of its books and records, unclean hands, and set-off. Continental also asserted Counterclaims for breach of contract and unjust enrichment. In the Counterclaim, Continental alleges "that G&S prepared and presented its claim to Continental based on fraud, intentional misrepresentations, and concealment of significant facts." (Counterclaim ¶ 5). More specifically, Continental alleges that G&S intentionally concealed the existence of customer contracts "in order to hide evidence that would demonstrate the extent of the inflation of G&S's claim under the Policy," that G&S intentionally concealed information about the melt loss as a result of the explosion and damage to the Manchester plant "in order to artificially inflate the amount of its recovery under the Policy," that G&S "fraudulently tie[d] the shutdown" of the Manchester facility to the loss by claiming that the shutdown was the result of damage to the roof and leaking rainwater as opposed to "poor financial performance" separate from the loss, and that "G&S

similarly attempted to defraud Continental" by submitting a "grossly inflated estimate for the cost of repairs" prepared by public adjuster WorldClaim. (Counterclaim ¶¶ 11, 22, 26-27, 28).

Although fact discovery closed on February 1, 2013, on November 15, 2013, the Court ordered discovery reopened for (1) additional discovery by Continental related to G&S's 2012 discovery disclosures, (2) discovery by both parties related to Continental's First Amended Answer and Counterclaim, and (3) expert and fact discovery resulting from the disclosure of an expert report by G&S.

On December 9, 2013, G&S filed an Answer and Affirmative Defenses to the Counterclaim, disputing that it withheld information.

On January 16, 2014, G&S served Supplemental Interrogatories and Requests for Production of Documents on Continental. Continental tendered responses on February 17, 2014, objecting to the extent that the requests did not relate to matters newly raised in its First Amended Answer and Counterclaim. That same day, G&S asked to conduct a second deposition of Continental's claims adjuster, Joseph Nalepa, and his supervisor, Jack Conard, in relation to Continental's First Amended Answer and Counterclaim (filed more than two years after the original depositions).

On March 6, 2014, Continental responded that it would not produce the two individuals for deposition, offering instead "to stipulate that Nalepa and Conard will not testify at trial" as to Continental's counterclaim allegations.

On March 8, 2014, G&S sent a letter identifying several deficiencies with Continental's written discovery responses and reasserting the request to depose Nalepa and Conard. On March 21, 2014, the parties participated in a meet-and-confer call to address G&S's concerns. Continental

responded on April 16, 2014, agreeing to correct some of the asserted deficiencies but refusing to take action on others.

On May 16, 2014, G&S filed the instant motion, having not yet received Continental's agreed-upon corrections. Subsequently, that same day, Continental provided the agreed-upon supplemental discovery responses.

## ANALYSIS

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to the party's claim or defense" and that "relevant information need not be admissible" but only "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The relevance standard encompasses "any matter that bears on, or that reasonably could lead to other mattes[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Federal Rule of Civil Procedure 37 allows a party to file a motion to compel an answer to an interrogatory or a response to a request for production. Fed. R. Civ. P. 37(a)(3)(B). For purposes of the rule, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

G&S moves the Court to compel Continental to fully answer certain discovery without evasion, to produce Nalepa (the claims adjuster) and his immediate supervisor Conard for deposition, and to disclose information as to how the claim adjuster and his supervisors have dealt with past insurance claims similar to G&S's claim.

1.      *Interrogatories Nos. 8 through 19*

G&S asks that Continental be required to answer Interrogatories 8 through 19 fully and completely without vague references to other documents or pleadings, as required by Federal Rule of Civil Procedure 33(b)(3). During the March 21, 2014 conference call, Continental agreed to produce complete answers, and, on May 16, 2014, Continental did so. Therefore, the motion as to this argument is moot.

2.      *Interrogatories 2, 7, and 11 and Request for Production 1 through 6–Objection "Beyond the Scope"*

Continental objected to Interrogatories 2, 7, and 11 and to all the Requests for Production (1 through 6) on the basis that the discovery requested was beyond the scope of discovery G&S is permitted to take at this stage of the litigation. Although the parties agree that G&S's right to discovery is limited to the allegations of fraud and related matters newly raised in Continental's First Amended Answer and Counterclaim, the parties disagree as to whether the requested discovery requests fall within the scope of that discovery.

a)      Interrogatories Nos. 2, 7, and 11

Having reviewed Interrogatories Nos. 2, 7, and 11, the Court finds that each is relevant to G&S's defense to Continental's First Amended Answer and Counterclaim because they concern the availability and exchange of information during the claim adjustment process. The fact that G&S's defenses may be factually similar to its claim of bad faith alleged in the Complaint does not prevent G&S from now seeking relevant discovery to defend against Continental's pleading.

While Continental attempts to narrow the scope of discovery by arguing that relevancy is limited to the time period beginning in 2012 when Continental first received the new discovery that formed the basis for its allegations of fraud by G&S, the full course of the interactions between G&S

and Continental during the claim adjustment process is relevant to whether G&S was forthcoming. The fact that Continental only first learned of the alleged fraudulent nature of G&S's claim submissions after G&S was compelled to disclose over 300,000 previously undisclosed documents in 2012 does not lessen the relevance of the previous communications and interactions between G&S and Continental. Thus, contrary to Continental's argument, the activities of the Continental claim representatives from 2007 through 2009 during the claim adjustment process is relevant to G&S's defenses. Despite Continental's assertion that the claim adjusters played no role in deciding to file the First Amended Answer and Counterclaim in 2013, the documents and information available to the claim adjusters, the information gathered by the claim adjusters, and with whom the claim adjusters spoke and when during the claim adjustment process is relevant to whether G&S withheld information or otherwise acted fraudulently. Accordingly, Interrogatories Nos. 2, 7, and 11 are tailored to seek relevant information.

Interrogatory 2 asks Continental to "identify all documents or other records received by Continental from G&S or its representatives between November 29, 2007 and July 1, 2010." This goes directly to Continental's claims that it was not allowed to review G&S's books and records and to its broader claim that G&S concealed or misrepresented material facts.

Interrogatory No. 7 asks Continental to "identify any and all representatives of Continental that visited any of G&S's facilities after the November 29, 2007 explosion." As with Interrogatory No. 2, Interrogatory No. 7 goes directly to the information that was available to Continental during the claim adjustment process, which G&S may use to refute Continental's claims of fraud, misrepresentation, and concealment. If Continental is alleging that it was improperly denied access

to information, then G&S is entitled to know what information Continental was given access to and when.

Interrogatory No. 11 asks Continental to "identify all facts, documents and witnesses that support the contentions in paragraphs 1-2 of Continental's Third Affirmative Defense that 'after the November 29, 2007 explosion, Plaintiff failed to contract for and expedite the repairs on its property so it could resume all or part of its operations as quickly as possible . . . ,'" thus failing to "mitigate its damages." While this affirmative defense was a part of Continental's original answer, it has new significance in light of Continental's charges of fraud and the alleged inflation of its costs and damages.

The Court grants the Motion to Compel as to Interrogatories Nos. 2, 7, and 11 and orders Continental to serve supplemental responses.

b)      Requests for Production Nos. 1-6

Overall, as with the interrogatories, the Court finds that G&S is permitted to conduct discovery regarding the nature and frequency of communications and the exchange of information between G&S and Continental during the claim adjustment process through its requests for production. In seeking this discovery, G&S may be able to show that Continental's adjusters had access to the information that Continental now claims was newly discovered during G&S's 2012 production of documents. This discovery would be relevant to Continental's allegations of fraud. The fact that the same information may *also* support G&S's bad faith claim matters not.

Request for Production No. 1 asks Continental to produce documents related to the responses to Interrogatories. Continental responded in its written response that all documents have already been produced to G&S. Continental also objected that the request was beyond the scope of new

discovery. When Continental serves amended responses to Interrogatories No. 2, 7, and 11 pursuant to this Order, any documents related to those amended responses are also relevant. To lessen the burden on Continental, if Continental has previously produced documents that are now also responsive to Request for Production No. 1, Continental may identify those documents by Bates Number or other similar identifying information, as provided by G&S in Request for Production No. 6. The Court grants the motion as to Request for Production No. 1 to the extent that it has granted the motion as to Interrogatories Nos. 2, 7, and 11 and orders Continental to serve a supplemental response.

Request for Production No. 2 asks Continental to produce all documents in its care, custody, or control that it received from G&S prior to July 1, 2010. Continental objected on the basis that the request was overbroad and burdensome because the information is equally available to G&S and that it is beyond the scope of the limited discovery now permitted. This request is relevant to Continental's First Amended Answer and Counterclaim because it identifies the information Continental *did* receive from G&S during the claim adjustment process. Any burden on Continental is reduced by allowing Continental to respond by reference to the Bates stamp number or other similar identifying information if Continental has already produced these documents during the course of discovery. The Court grants the motion as to Request for Production No. 2 and orders Continental to serve a supplemental response.

Request for Production No. 3 asks Continental to "produce all documents in your care, custody or control that you received pursuant to all non-party discovery requests in this case," and Request for Production No. 4 asks Continental to "produce all documents in your care, custody or control that you received from any witness or potential witness in this case." In its written response

to both, Continental stated that all responsive documents have already been produced. Thus, the Court denies the motion as to Requests for Production Nos. 3 and 4.

Request for Production No. 5 asks Continental for "all documents provided to, received by, or reviewed by any of your experts in this case." Continental objected that this information was equally available to G&S and beyond the scope of the current discovery. Nevertheless, Continental produced nonprivileged responsive documents in its possession. G&S does not assert any deficiency with Continental's production. Therefore, the Court denies the motion as to this request.

Finally, Request for Production No. 6 asks that, if any documents responsive to Requests No. 1-5 have been previously produced during the litigation, Continental identify them by Bates stamp number or other similar identifying information. G&S fails to acknowledge in its motion that Continental identified all responsive documents in its care, custody, or control by Bates number when it served its answers and objections to G&S's supplemental discovery on February 17, 2014.

c)      Depositions

G&S is permitted to reopen the depositions of Continental's claim adjuster Joseph Nalepa and his immediate supervisor Jack Conard regarding the relevant matters of the scope, nature, and extent of the information available and exchanged during the claim adjustment process. Continental argues that Nalepa and Conard have no knowledge of the new matters raised in the First Amended Answer and Counterclaim because the documents that form the basis of the pleadings were not disclosed by G&S until 2012. While this may be true, G&S is nevertheless entitled to question Nalepa and Conard regarding the claim adjustment process relevant to G&S's defense to the new allegations by Continental. Also, G&S is entitled to confirm with Nalepa and Conard themselves

that in 2007 through 2009 they were unaware of the documents later produced by G&S in 2012 and that Nalepa and Conard were not involved with filing the First Amended Answer and Counterclaim.

The Court grants the Motion to Compel to this extent and orders Continental to make Joseph Nalepa and Jack Conard available for deposition.

3.      *Interrogatories Nos. 3, 4, 5, and 6–Past Insurance Claims*

In contrast, the Court finds that Interrogatories Nos. 3, 4, 5, and 6 are not relevant to the new allegations in Continental's First Amended Answer and Counterclaim, but rather are relevant only to G&S's original bad faith claim.

Interrogatory No. 3 asks Continental to identify "all claims adjusted by Joseph Nalepa, Jack Conard or Thomas Gennett between 2002 and 2010 in which Continental paid a business interruption claim for which the Period of Restoration . . . was equal to or greater than three months."

Interrogatory No. 4 asks Continental to identify "all claims adjusted by Joseph Nalepa, Jack Conard or Thomas Gennett between 2002 and 2010 in which Continental paid a business interruption claim in excess of $500,000."

Interrogatory No. 5 asks Continental to identify "all claims adjusted by Joseph Nalepa, Jack Conard or Thomas Gennett between 2002 and 2010 in which Continental denied a portion or the entirety of a business interruption claim."

Interrogatory No. 6 asks Continental to identify "all claims adjusted by Joseph Nalepa, Jack Conard or Thomas Gennett between 2002 and 2010 in which Continental adjusted a claim for a partial or total loss of a business."

Continental objected to these interrogatories on the ground that the production of other policyholders' claim information is irrelevant and possibly subject to confidentiality orders or may otherwise be privileged.

In its motion, G&S argues that it is entitled to investigate whether Continental made similar claims of misrepresentation and inflated estimates in other cases, so as to possibly mount a defense by showing that such allegations are part of a pattern used by Continental to discredit its policyholders and wrongfully deny claims. G&S further argues that, when an insurer's bad faith is at issue, how other policyholders' claims have been handled is relevant for comparison. Herein lies the fault with G&S's reasoning. During the adjustment of G&S's claim by Nalepa, Conard, and Gennett, Continental did not assert that G&S engaged in fraud, misrepresentation, or concealment as a basis for denying G&S's claim. The allegations of fraud, misrepresentation, and concealment came only in 2013 after G&S produced additional discovery in 2012 that led Continental to become aware of the alleged fraud. Moreover, Continental represents in its response brief that Nalepa, Conard, and Gennett did not have any involvement in deciding to pursue or draft the First Amended Answer and Counterclaim.

Thus, how Nalepa, Conard, and Gennett handled other policyholders' claims is irrelevant to Continental's First Amended Answer and Counterclaim and G&S's defenses thereto. The cases cited by G&S are inapposite because they address the relevance of discovery to an insured's claim of bad faith; discovery in this case is now closed on G&S's bad faith claim. *See Ill. Cas. Co. v. Toor's Inc.*, No. 2:07-CV-282, 2009 WL 1322873, at *3 (S.D. Ind. May 12, 2009) (finding that the insurance company's claim for declaratory judgment and the insured's counterclaim for breach of the insurance contract "speak to the same issue–i.e., whether the facts of this case warrant the denial

of [defendant's] claim for fire loss"); *Progressive N. Ins. Co. v. Bachmann*, 314 F. Supp. 2d 820, 833 (W.D. Wis. 2004) (finding, in denying a motion for bifurcated proceedings, that the claims were not so distinct as to warrant separate trials because the insured's allegation that the insurance company breached the contract by refusing to pay for repairs to the boat appeared to be the "mirror image" of the insurer's claim that it was not liable under the terms of the contract because the damage to the boat was not a covered loss under the policy); *Auto-Owners Ins. Co. v. C&J Real Estate, Inc.*, 996 N.E.2d 803, 805-06 (Ind. Ct. App. 2013) (holding that limited discovery regarding third party insurance claims is permissible in a case involving an insured's claims of breach of duty of good faith and bad faith); *Allstate Ins. Co. v. Scroghan*, 851 N.E.2d 317 (Ind. Ct. App. 2006) (holding that the trial court did not abuse its discretion in allowing discovery of general corporate information of the insurance company in relation to the insured's bad faith claim).

Nevertheless, as set forth in the previous section, when G&S re-takes the depositions of Nalepa and Conard regarding the availability and exchange of information during the claim adjustment process, G&S is permitted to question each regarding his role, if any, in filing the First Amended Answer and Counterclaim.

*4.     Prior Awarded Fees*

In the motion, G&S asks the Court to set a date certain for Continental's payment of costs previously ordered by the Court. Continental has now paid those costs. Therefore, the motion is moot as to this request.

*5.     Payment of Expenses Related to this Motion*

Federal Rule of Civil Procedure 37(a)(5)(C) provides that, if a motion is granted in part and denied in part, the court may, after giving an opportunity to be heard, apportion reasonable expenses

for the motion. Fed. R. Civ. P. 37(a)(5)(C). Having considered all the parties' arguments as well as the position G&S held through much of the parties' negotiations that it was entitled to discovery broader than allowed by the Court's orders, the Court declines to award any expenses related to this motion.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS in part** and **DENIES in part** Plaintiff's Motion to Compel Defendant to Answer Discovery and Produce Witnesses for Deposition [DE 187]. The Court **ORDERS** Defendant Continental Casualty Company to serve the discovery responses ordered in this motion on or before **July 18, 2014**. The Court **ORDERS** the parties to confer on or before **July 2, 2014**, to set a date for the depositions of Joseph Nalepa and Jack Conrad.

SO ORDERED this 25th day of June, 2014.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:    All counsel of record