UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| G&S METAL CONSULTANTS, INC., | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 3:09-CV-493-JD-PRC |
| | ) |
| CONTINENTAL CASUALTY COMPANY, | ) |
|     Defendant. | ) |

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Strike Expert Report of Jim Leatzow [DE 199], filed by Defendant Continental Casualty Company ("Continental") on July 16, 2014. Plaintiff G&S Metal Consultants, Inc. ("G&S") filed a response on August 14, 2014, and Continental filed a reply on August 28, 2014.

## BACKGROUND

G&S was in the business of processing aluminum scrap at facilities located in Indiana and Georgia. In the Complaint, G&S alleges that a November 29, 2007 steam explosion at its Georgia facility "shut the plant down and caused severe property damage and business interruption losses" that went unreimbursed by Continental under a property insurance policy issued to G&S. The claims alleged are breach of contract, promissory estoppel, and bad faith claims handling. The claim of bad faith claims handling is based on an allegation that "[a]fter making the initial payments under the Policy for the large property damage and business interruption loss caused by the Manchester explosion, [Continental] delayed further investigation and settlement of a claim for which liability has been clear and undisputed." (Compl. ¶ 24). G&S alleges this was done in bad faith.

On April 1, 2010, the Court entered a scheduling order, setting a deadline for G&S to serve its expert disclosures on or before January 31, 2011, a deadline for Continental's expert disclosures

of February 23, 2011, and a deadline for the close of all discovery of April 22, 2011. On January 28, 2011, the Court extended the deadlines to March 17, 2011, April 18, 2011, and May 23, 2011, respectively. On March 21, 2011, G&S disclosed seven potential experts, all of whom were disclosed as witnesses who would potentially provide testimony concerning G&S's alleged damages and only one of whom was a retained expert, who was to give an opinion regarding G&S's business interruption and extra expense claim. G&S did not disclose or identify an expert regarding G&S's claims regarding Continental's claim handling or alleged bad faith. In April 2011, Continental made its expert disclosures.

In December 2011, the Court granted a Motion to Compel filed by Continental. As a result, from January 2012 through October 2012, G&S disclosed approximately 300,000 documents dating back to 2003 that had not been previously provided to Continental. Based on those documents, Continental filed a motion seeking leave to file an Amended Answer to assert additional affirmative defenses and Counterclaims based on alleged misconduct by G&S during the claims process. The Court granted the motion.

On November 12, 2013, Continental filed the Amended Answer, pleading four additional affirmative defenses. The Fourth Affirmative Defense of "Violation of Loss Conditions – Inspection and Copying of Books and Records" alleges that G&S violated its duty by failing to provide Continental with its books and records upon reasonable request and by refusing to permit Continental to copy its books and records.

The Fifth Affirmative Defense is "Violation of Loss Conditions – Concealment, Misrepresentation or Fraud" and alleges that G&S violated this clause by committing fraud and by intentionally concealing or misrepresenting material facts concerning the covered property.

2

The Sixth Affirmative Defense of "Unclean Hands" alleges that G&S intentionally concealed or misrepresented material facts in connection with the insurance claim.

The Seventh Affirmative Defense of "Set-off" alleges that Continental justifiably relied on G&S's misrepresentations and intentional omissions, resulting in a disbursement of funds to G&S in an amount greater than the covered sum to which G&S was entitled.

Continental also asserts Counterclaims for "Breach of Contract" and "Unjust Enrichment." Continental alleges "that G&S prepared and presented its claim to Continental based on fraud, intentional misrepresentations, and concealment of significant facts." (Counterclaim ¶ 5). More specifically, Continental alleges that G&S intentionally concealed the existence of customer contracts "in order to hide evidence that would demonstrate the extent of the inflation of G&S's claim under the Policy," that G&S intentionally concealed information about the melt loss as a result of the explosion and damage to the Manchester plant "in order to artificially inflate the amount of its recovery under the Policy," that G&S "fraudulently tie[d] the shutdown" of the Manchester facility to the loss by claiming that the shutdown was the result of damage to the roof and leaking rainwater as opposed to "poor financial performance" separate from the loss, and that "G&S similarly attempted to defraud Continental" by submitting a "grossly inflated estimate for the cost of repairs" prepared by public adjuster WorldClaim. (Counterclaim ¶¶ 11, 22, 26-27, 28).

Although fact discovery closed on February 1, 2013, on November 15, 2013, the Court ordered discovery reopened for (1) additional discovery by Continental related to G&S's 2012 discovery disclosures, (2) discovery by both parties related to Continental's First Amended Answer and Counterclaim, and (3) expert and fact discovery resulting from the disclosure of an expert report by G&S. On November 21, 2013, the Court held a scheduling conference to set dates related to that

ruling, at which the following exchange occurred:

> The Court: Before I decide this, I think maybe I should also discuss the request that G&S has to hire or retain an expert to defend against the fraud counterclaim.
>
> Mr. Claflin: Yes, Your Honor.
>
> The Court: I'll come back to the number of depositions, but do you want to speak to that, please?
>
> Mr. Claflin: Well, essentially we're looking at a brand-new claim, and, Your Honor, we're getting it under our belt. But, frankly –
>
> The Court: Are you able to say in just a sentence or two what the fraud claim is, or is it too hard to say? Keep it brief.
>
> . . . .
>
> Mr. Claflin: I think they believe it's fraud in the way that we presented the claim; that we are asking for costs that they feel were unnecessary or untoward, or something to that effect.
>
> . . . .
>
> The Court: And now you're saying, Judge, let me hire an expert to defend the fraud claim?
>
> Mr. Claflin: Yes.
>
> . . . .
>
> The Court: Do you want to speak to their request - - do you object or agree or want to say something about that?
>
> Mr. Hinkhouse: . . . Just to comment on the - - sort of the designation of our counterclaim as fraud, I think maybe in a shorthand way it's easy to describe it as such, but I think Judge DeGuilio's order made clear that it's really not fraud in the classic sense. We have a policy provision that says if you misrepresent facts to the insurance company in presenting your claim, your policy is null and void.
>
> . . . .

| | |
|---|---|
| The Court: | . . . Does the defense have an objection, or not, to their request? |
| Mr. Beth: | Your Honor, . . . [W]e object to it. We believe that there's no order in this case, first of all, that would allow G&S to designate another expert, and they haven't sought leave to do so. . . . [W]e believe that it's improper because the deadline for disclosing experts was more than two years ago.<br><br>Continental's new claims, if you will, are based on the fact that when we finally got G&S's true business documents, they disclosed that a lot of the representations that they made during the insurance claim were false, is our position.<br><br>G&S has at all times had access and control over its own business documents. Whether it believes that they were true or false, it could have disclosed in the proper time whatever experts it wanted.<br><br>We feel that we were allowed to - - and the Court has granted us leave - - to amend our pleadings as justice, though, requires based on the evidence that we recently got from G&S, and that doesn't give them an opportunity, based on their failure to timely disclose it, to have a do-over with respect to their experts to defend the case. |
| Mr. Claflin: | Your Honor, it's not a do-over. We're responding to a brand-new fraud claim.<br><br>And to the extent that leave is required, I'm not sure if that's exactly the right thing at this point. We are talking about a whole new schedule for discovery. But if leave is required, essentially that's what we're saying - - asking for today, is that we're needing to defend ourselves against a new claim and the old deadlines really have no relevance to that because there was no fraud claim before.<br><br>So we're just wanting permission to defend ourselves. |
| The Court: | All right. I take the plaintiff's comments as an oral motion for leave. I grant that oral motion, and G&S will be allowed to retain an expert to defend what we're calling a fraud claim or a misrepresentation claim. |

(Docket entry 199-2, pp. 12-16).

The Court set the deadline for G&S to disclose an expert in support of its defense to Continental's Counterclaim for June 2, 2014.

On December 9, 2013, G&S filed an Answer and Affirmative Defenses to the Counterclaim, disputing that it withheld information. G&S asserted three affirmative defenses relevant to this motion:

> . . . .
> 2.  Continental has waived or is estopped from asserting any defenses to coverage.
> 3.  Continental is barred by the doctrine of laches.
> 4.  Continental's claims are barred, in whole or part, by the doctrine of unclean hands.

(Docket entry 176, p. 11).

On June 18, 2014, the Court granted a request to extend G&S's expert witness disclosure deadline to June 19, 2014.

On June 18, 2014, G&S disclosed Mr. Jim Leatzow as its expert and provided his report.

## ANALYSIS

In the instant motion, Continental argues that Mr. Leatzow's report is not limited to defending against Continental's Counterclaims but rather seeks a "do over" on G&S's original expert disclosures in support of its claims relating to Continental's claims handling. As a result, Continental argues that the report is untimely and asks that it be stricken. Continental brings this motion solely pursuant to Federal Rule of Civil Procedure 26 and is not challenging the admissibility of Mr. Leatzow's opinions under Federal Rule of Evidence 702. In fact, Continental reserves its right to later bring a Rule 702 objection under the standard of *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993), if necessary at the appropriate time. Thus, the Court disregards any arguments made under the standard of Rule 702 and *Daubert*.

Federal Rule of Civil Procedure 26 provides, in relevant part, that a party must make expert disclosures "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). A report must contain, among a list of other requirements, "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i), (ii). The failure to identify a witness as required by Rule 26(a) results in the offending party being not allowed to use that witness at trial, "unless the failure was substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1).

The Court finds that, to the extent Mr. Leatzow's report addresses G&S's defense to Continental's Counterclaims, the report is timely as it was served by the June 18, 2014 deadline set by the Court. Thus, the issue before the Court is whether the content of Mr. Leatzow's report addresses G&S's defense to Continental's Counterclaims, or whether, as argued by Continental, his report is a veiled attempt to disclose an expert to support the bad faith claims in G&S's Complaint long after the deadline to do so has passed.

Continental contends that Mr. Leatzow's opinions are focused almost exclusively on G&S's allegations of bad faith claims handling against Continental. G&S responds that Mr. Leatzow's opinions regarding Continental's bad faith are necessary for G&S to defend against Continental's Counterclaims as these opinions support G&S's defense of unclean hands.

In his opinion, Mr. Leatzow represents that he was asked to render an expert opinion on three topics: (1) whether G&S fulfilled its duties under the policy; (2) whether Continental met or breached the expected standard of care in their claims handling of the explosion claim; and (3)

whether Continental's conduct resulted in bad faith. He further notes that "[a]t issue is whether both Continental and G&S acted in a timely, appropriate and reasonable fashion." (Def. Br., Ex. 3, 2). After a seven-page discussion of both the general duties of insureds and insurers as well as of certain events underlying this case, Mr. Leatzow gave two opinions:

> 1. Continental Casualty breached its duty of good faith and fair dealing to its insured G&S in the handling of the subject explosion claim at G&S's Manchester, Georgia facility.
>
> 2. G&S cooperated with Continental during the claims presentation process, gave Continental ample access to the facility, and answered Continental's information requests with reasonable speed and in good faith.

*Id*. at p. 12.

Having carefully read Mr. Leatzow's report in the context of the pleadings filed in this case, the Court finds that the opinions and analysis contained in the report serve as a basis for G&S to defend itself against Continental's Counterclaims. Mr. Leatzow analyzes G&S's actions in relation to G&S's responsibilities under the contract and in relation to Continental's claims handling. The Court finds that the references to Continental's actions, most often to those actions taken or not taken by Mr. Nalepa, the claims adjustor, provide the context for Mr. Leatzow's opinion regarding the propriety or sufficiency of G&S's actions. G&S is attempting to support its unclean hands defense through the opinion of a qualified expert that Continental breached its duties to G&S in the handling of the claims arising from the Manchester plant's explosion and catastrophic losses and acted in bad faith. Thus, the Court finds that, because Mr. Leatzow's report and opinions focuses on G&S's defense to Continental's Counterclaims, Mr. Leatzow's report was not untimely under Rule 26(a)(2).

Continental contends that G&S failed to respond to its argument that of the 23 paragraphs in the "Overview" section of Mr. Leatzow's report, 18 focus solely on the duties of insurers and/or Mr. Nalepa's alleged failure to satisfy the duties. The Court disagrees with this characterization of the report; again, as stated above, a careful reading of the report as a whole reveals that much of the discussion of Mr. Nalepa's actions is intertwined with the analysis of G&S's actions and is offered as context to explain the propriety of G&S's actions.

In its reply brief, Continental contends that several of its opening-brief arguments go unanswered by G&S, namely that Mr. Leatzow did not cite any document from G&S's 2012 rolling production, which form the basis of Continental's Counterclaims; that, although Mr. Leatzow reviewed G&S's April 26, 2013 mediation statement, he did not review Continental's April 2013 mediation statement, which Continental argues identifies many of the problems with G&S's claims submission as a result of G&S's 2012 production; and that Mr. Leatzow offers no opinion on the story of why G&S shut down, on G&S's melt loss, on G&S's failure to timely produce customer contracts in order to hide evidence, or on any of Continental's factual allegations that form the basis for its Counterclaims. The Court views these arguments as going to the admissibility of Mr. Leatzow's opinion under Rule 702 and the standard articulated in *Daubert*, which Continental may choose to raise in a subsequent motion made under that standard.

Continental criticizes the focus of Mr. Leatzow's report, which is essentially a criticism that Mr. Leatzow assessed the propriety of G&S's actions by looking at the impropriety of Continental's actions; criticizes the documents and facts that Mr. Leatzow did or did not consider; and criticizes that Mr. Leatzow himself did not mention the defense of "unclean hands" in his report. G&S's argument that Continental should not get to dictate the scope of G&S's defense to the Counterclaims

9

or the scope of the opinions of its expert is well taken. Again, Continental may choose to make these arguments in a *Daubert* motion.

**CONCLUSION**

Based on the foregoing, the Court hereby **DENIES** Defendant's Motion to Strike Expert Report of Jim Leatzow [DE 199].

SO ORDERED this 8th day of September, 2014.

    s/ Paul R. Cherry
    MAGISTRATE JUDGE PAUL R. CHERRY
    UNITED STATES DISTRICT COURT

cc:    All counsel of record