UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| G&S METAL CONSULTANTS, INC., )<br>      Plaintiff/Counter Defendant, )<br>)<br>v. )<br>)<br>CONTINENTAL CASUALTY COMPANY, )<br>      Defendant/Counter Claimant. ) | CAUSE NO.: 3:09-CV-493-JD-PRC |

**OPINION AND ORDER**

This matter is before the Court on G&S Metal Consultants, Inc.'s Motion to Compel Continental Casualty Company to Disclose Information on Loss Reserves [DE 210], filed by Plaintiff G&S Metal Consultants, Inc. ("G&S") on September 16, 2014. Defendant Continental Casualty Company ("Continental") filed a response on October 3, 2014, and G&S filed a reply on October 7, 2014.

An insurance reserve, also known as a "loss reserve," is "[t]he reserve for outstanding losses at least equal to the aggregate estimated amounts due or to become due on account of all losses or claims of which the company has received notice." Ind. Code § 27-1-13-8(c). G&S asks the Court for an order permitting it to question Continental's Rule 30(b)(6) representative about loss reserves. Continental opposes the request, arguing that loss reserves are irrelevant at this stage of the litigation when discovery on G&S's Complaint has long been closed and discovery remains only as to G&S's defense of Continental's fraud Counterclaim. Continental also argues that information about loss reserves since the onset of litigation is protected as the mental impressions and litigation strategies of Continental's lawyers.

**BACKGROUND**

G&S, the insured, filed this first party lawsuit against Continental, its insurer, on August 19, 2009, alleging breach of contract and bad faith related to property damage and business interruption losses that allegedly went unreimbursed by Continental after a November 29, 2007 steam explosion at G&S's Georgia facility.

The parties conducted discovery over the next two years. On October 11, 2011, G&S took the deposition of Mr. Lon Barrick, Continental's 30(b)(6) representative. At that time, Continental objected to Mr. Barrick providing any testimony on loss reserves set for this claim on the grounds that the testimony is privileged, proprietary, irrelevant, and unlikely to lead to the discovery of admissible evidence. However, Mr. Barrick provided testimony on how loss reserves are generally set in the adjustment of property insurance claims, including the approximate dollar amount of the "initial" or "bulk" reserves that are set as a matter of course when new claims are entered into Continental's computer system.

In December 2011, the Court granted Continental's Motion to Compel, and from January through October 2012, G&S disclosed approximately 300,000 documents dating back to 2003 that had not been previously provided to Continental. Based on those documents, Continental sought leave to file an amended answer to assert additional affirmative defenses and a counterclaim based on alleged misconduct by G&S during the claim adjustment process. The Court granted the motion. On November 12, 2013, Continental filed the Amended Answer, pleading four additional affirmative defenses and a Counterclaim. On November 15, 2013, the Court reopened discovery to allow G&S to defend against the Counterclaim. The discovery deadline was reset for September 1, 2014.

On December 9, 2013, G&S filed an Answer and Affirmative Defenses to the Counterclaim.

On August 1, 2014, G&S served on Continental a Notice of Rule 30(b)(6) Deposition and Subpoena Duces Tecum. Deposition Topic 13 requested testimony as to "[w]hether Continental *currently* has a reserve or loss reserve with regard to the Claim, the amount of each reserve, when such reserve was established, *whether there was a change in the reserve related to the filing of the Counterclaim or other reasons for the change in reserve*, and the identity of all persons with knowledge of the facts relating to the establishment of the reserves."[1] (Pl. Br., Ex. A, p. 4) (emphasis added). Continental objected to Deposition Topic 13.

Mr. Barrick's Rule 30(b)(6) deposition was originally set for August 29, 2014, and was then reset for September 30, 2014, at G&S's request because of Continental's objection to discovery of loss reserves. G&S did not file the instant motion until September 16, 2014, which necessitated the rescheduling of Mr. Barrick's deposition. The Court extended the discovery deadline solely to allow for Mr. Barrick's deposition following a ruling on the instant motion.

## ANALYSIS

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to the party's claim or defense" and that "relevant information need not be admissible" but only "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The relevance standard encompasses "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Federal Rule of Civil Procedure 37 allows a party to file a motion to compel if a corporation or other entity fails to make a designation under Rule 30(b)(6). *See* Fed. R. Civ. P. 37(a)(3)(B). For purposes

---

[1] The parties have resolved all other disputes with respect to the deposition topics requested in the Notice.

of the rule, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

Although G&S did not pursue a motion to compel discovery of loss reserves during discovery on its Complaint for breach of contract and bad faith, G&S now seeks testimony regarding the loss reserves in relation to its defense of Continental's Counterclaim. Unlike in most cases, in which the insured wants information on loss reserves to learn how the insurer valued the claim,[2] G&S seeks the information in this case to determine if the discovery that it provided to Continental in 2012 was really new to Continental such that the discovery could have formed the basis of Continental's subsequently filed Counterclaim for fraud against G&S.

Continental's Counterclaim alleges that G&S fraudulently concealed and misrepresented information that it failed to disclose during the original claim submission process by producing the information for the first time in 2012 during this litigation. G&S reasons that, one of the issues will be what Continental knew and when and what information Continental had access to and when. Based on Mr. Barrick's prior testimony that reserves set for G&S's claim change as new information is received by Continental, G&S reasons that "what the reserves were and are, when they changed, and by how much" may "establish a time line" of when Continental received information that it considered significant to the claim and whether the information was received during the original

---

[2] *See Cummins, Inc. v. Ace American Ins. Co.*, No. 1:09-CV-738, 2011 WL 130158, at *11 (S.D. Ind. Jan. 14, 2011) ("Cummins's main justification for seeking reserve information is its alleged relevance to Cummins's bad faith claim because, it contends, reserve information can 'shed light on the insurer's state of mind behind its decision to deny coverage.' Cummins also argues that, apart from bad faith, reserve information may provide information about an Insurer's position on the existence and extent of coverage."); *Silva v. Basin Western, Inc.*, 47 P.3d 1184 (2002) (discussing, in a case involving a third party claim, the purpose of loss reserves as a "desire on the part of the states and the insurance companies themselves to ensure that resources are available to cover the insurer's future liabilities," recognizing that "a particular reserve amount does not necessarily reflect the insurer's valuation of a particular claim," discussing cases from various jurisdictions on the discoverability of loss reserve information in both the first-party and third-party insurance context, and recognizing that some courts have found reserves discoverable in first party bad faith claims brought by the insured against the insurer).

claim process or, as alleged by Continental in the Counterclaim, for the first time in 2012 during this litigation. G&S suggests that if the information was not "new" to Continental in 2012, this would be evidence that Continental's Counterclaim sounding in fraud is without merit.

Continental responds that Rule 30(b)(6) testimony on how its loss reserves may have changed after this litigation was filed is irrelevant and reflects nothing more than the mental impressions and litigation strategies of Continental's lawyers, protected by the attorney-client privilege and the work product doctrine. In his Affidavit filed in support of Continental's objection, Mr. Barrick explains that once property insurance claims become the subject of coverage litigation, Continental may increase or decrease loss reserve sums in order to address litigation developments that may have taken place or may take place in the future, based on Continental's litigation strategy, information obtained in discovery, the potential for settlement, and the possibility of a favorable or unfavorable judgment. (Def. Br., Ex. B, ¶ 5). He further explains that, in evaluating whether to increase or decrease loss reserves after litigation begins, Continental generally takes into account the confidential advice and work product of the attorneys retained to represent Continental in the litigation. *Id.* at ¶ 6. Continental's attorneys generally report litigation developments and legal analysis to Continental in confidential attorney-client communications. *Id.* The advice, analysis, and recommendations of the attorneys are discussed by Continental management, who take into account the confidential attorney-client communications in considering whether and how to increase or decrease loss reserves. *Id.* Mr. Barrick explains that, consistent with its usual practices, in this case Continental evaluated whether to increase or decrease loss reserves in connection with this case in order to address litigation developments that have taken place or may take place in the future based

on Continental's litigation strategy, information obtained during discovery, the potential for settlement, and the possibility of a favorable or unfavorable judgment. *Id*. ¶ 9.

The Court finds that any change in the loss reserves since the lawsuit was filed, and, more specifically since G&S produced additional discovery in 2012, would not provide an identifiable correlation between Continental's knowledge at the time of any changes (or lack of changes) to the loss reserve during this litigation and the knowledge that Continental had during the claim adjustment process prior to this lawsuit when loss reserves were first established. Multiple factors affect the adjustment of loss reserves during the course of litigation in addition to information obtained during discovery, such as litigation strategy, the potential for settlement, developments in the litigation, and the possibility of a favorable or unfavorable judgment. G&S has offered no explanation of how the movement of the loss reserves could lead to admissible evidence.

Moreover, G&S already has the information it needs for an analysis of what Continental knew during the claim adjustment process and then later during this litigation and in 2012. Over the course of several discovery motions since the discovery deadline was extended in relation to Continental's Counterclaim, the Court has granted G&S wide latitude to conduct discovery regarding the information and documents that Continental received during the initial claims process even though discovery on G&S's Complaint for bad faith had closed. Continental has responded to G&S's requests for production of documents, producing all nonprivileged documents contained in its claim file, in the file of Matson, Driscoll & Damico, and all the documents it had received from third parties HIG Capital, Hylant Group, Langford Construction, MJ Insurance, Periculum Capital, and World Claim. Continental has responded to interrogatories regarding when it received information, and the depositions of Joe Nelepa, Jack Conrad, Hoe Hunnius, Kevin Callahan, and Mr.

Barrick addressed this topic. Also, the topic of "what Continental knew and when" can be further explored in the continuation of Mr. Barrick's deposition. G&S has not demonstrated that the purported "timeline" based on the moving value of the loss reserves would reveal any additional information that G&S does not already have. Given the numerous factors that go into a loss reserves calculation, the causal relationship between the loss reserves and G&S' production in 2012 would be tenuous at best.

Thus, because testimony about the loss reserves since the filing of the lawsuit does not appear reasonably calculated to lead to the discovery of admissible evidence, the loss reserves are not relevant and, as a result, are not discoverable. The question remains whether the loss reserves developed *prior* to the filing of this lawsuit and during the claim adjustment process are nevertheless discoverable. The parties heavily dispute whether loss reserves are discoverable in a first party bad faith cause of action, such as in this case, in which the insured sues the insurer for claims such as breach of contract, bad faith, and/or breach of the duty of good faith and fair dealing.

G&S relies primarily on *Auto-Owners, Inc. v. C&J Real Estate, Inc.*, 996 N.E.2d 803 (Ind. Ct. App. 2013), an Indiana Court of Appeals case governed by Indiana discovery rules, which held that loss reserve information is relevant in a first party bad faith action and, thus, discoverable under Indiana Trial Rule 26(B)(1).[3] G&S also cites *Woodruff v. American Family Mut. Ins. Co.*, 291 F.R.D. 239, 250 (S.D. Ind. 2013), a federal district court case applying the Federal Rules of Civil

---

[3] The court distinguished the case before it from a prior ruling in *Schierenberg v. Howell-Baldwin*, 571 N.E.2d 335 (Ind. Ct. App. 1991), on the basis that (1) *Schierenberg* was a negligence tort case whereas *Auto-Owners* involved a bad faith tort claim, the elements of which were different from a negligence claim, and (2) *Schierenberg* involved a request by a third party for information regarding the insurance policy whereas in *Auto-Owners* the insured was requesting information about its own policy. *Auto-Owners, Inc. v. C&J Real Estate, Inc.*, 996 N.E.2d 803, 807 (Ind. Ct. App. 2013). The court also found that the trial court did not abuse its discretion when it rejected the insurer's argument that loss reserves are work product doctrine of Indiana Trial Rule 26(B)(3). *Id*.

Procedure, but the case is inapposite because, in holding that reserve-related information was relevant, the court was faced with an insured's third party claim that the insurer allegedly failed to settle an underlying tort claim; the court was not evaluating a first party claim such as the instant case. Notably, the court in *Woodruff* cites *American Protection Ins. Co. v. Helm Concentrates, Inc.*, 140 F.R.D. 448, 450 (E.D. Cal. 1991), which distinguished the relevancy of loss reserves in a third party bad faith settlement case from those in a first party bad faith claim based on denial of coverage and found that loss reserves would not be relevant in the latter. *Woodruff*, 291 F.R.D. at 250. G&S further cites *United States Fire Insurance Co. v. Bunge N. Am., Inc.*, 244 F.R.D. 638, 644 (D. Kan. 2007), but, like *Woodruff*, *Bunge* is inapposite because it is a reinsurance case and not a first party bad faith case.

In its response brief, Continental distinguishes between discovery of loss reserves in first and third party claims as well as between requests for loss reserves developed during the claims adjustment process as opposed to requests for loss reserves developed during ongoing litigation. As for the distinction between first and third party claims, Continental relies primarily on *Cummins, Inc. v. Ace American Ins. Co.*, No. 1:09-CV-738, 2011 WL 130158 (S.D. Ind. Jan. 14, 2011), which applied the relevancy standard of Federal Rule of Civil Procedure 26(b)(1) and held:

> [T]he connection between the requested loss reserve information and the issues in this case is too attenuated to require the Insurers to search for and produce every document that relates to the setting (or not setting) of loss reserves for Cummins' Claim. Because of the business risk and regulatory compliance considerations involved in the setting of loss reserves, loss reserves information are not synonymous with, and may not be particularly probative of, an Insurer's opinion on the true value of a particular claim or on coverage.

*Id.* at *12 (citing *Silva v. Basin Western, Inc.*, 47 P.3d 1184, 1190-92 (Colo. 2002)). However, the court went on to order that, although the insurers did not have to find and produce all documents on

8

loss reserves, they were not permitted to redact loss reserves information from documents the insurers otherwise had or would produce because such information is not wholly irrelevant. *Id.*

As for the discoverability of loss reserves once litigation is anticipated, Continental cites several cases. In *Wachovia Bank v. Clean River Corp.*, 631 S.E.2d 879, 884 (N.C. Ct. App. 2006), the court found that information pertaining to loss reserves was covered by the work product doctrine once correspondence asserting a claim under the policy was sent signaling that litigation was anticipated. However, the court found no abuse of discretion in the trial court's finding that loss reserves were otherwise relevant. *Id.* Continental also cites *Coffeyville Resources Refining & Marketing v. Liberty Surplus Insurance Corporation*, 261 F.R.D. 586, 593 (D. Kan. 2009), a first party breach of contract claim, in which the court held that discovery of loss reserves was protected by the work product doctrine because the determination of the loss reserve was made in consultation with counsel after litigation was anticipated. Finally, Continental cites *Progressive Casualty Insurance Company v. Federal Deposit Insurance Corporation*, 298 F.R.D 417, 426 (N.D. Iowa 2014), which held that loss reserves are not necessarily irrelevant and are discoverable but that the work product privilege protected loss reserve information after a specific date on which the court determined litigation was anticipated.

In *Compton v. Allstate Property & Casualty Insurance Co.*, the court held that "[a]n insurance company in a *first-party insurance coverage dispute* may not withhold on work product grounds material that it or its representatives prepared as part of the normal course of the insurance business, as contrasted to documents prepared for purposes of litigation with its insured." 278 F.R.D. 193, 197 (S.D. Ind. 2011) (emphasis added). As for loss reserves information, the court recognized that "insurers are reluctant to share reserve information because reserves generally reflect only

9

precautionary estimates used for business-risk purposes and not an insurer's opinion about the merits of the claim. But the court has no basis for finding the information wholly irrelevant or for finding that the burden of revealing the information . . . outweighs any potential relevance." *Id*. at 198 (citing *Silva v. Basin Western, Inc.*, 47 P.3d 1184, 1190-92 (Colo. 2002) (discussing cases from other jurisdictions on the discoverability of loss reserve information in both the first party and third party insurance contexts)). The court found no legal basis, on the record before it, for permitting the insurer to redact loss reserve information for discovery purposes. *Id*.

Thus, once litigation is anticipated, loss reserves are protected by the work product doctrine when there is evidence that the loss reserves were established or adjusted in consultation with counsel in anticipation of or during litigation. At this stage of the litigation in this case, the Court need not determine the relevancy of information regarding Continental's loss reserves developed during the claim adjustment process *prior* to the filing of this lawsuit or *prior* to the date that litigation was anticipated. To the extent that pre-litigation loss reserve information may be relevant to G&S's first party breach of contract and bad faith claims brought in G&S's Complaint, discovery is closed on those claims and G&S did not pursue a motion to compel discovery of loss reserves before discovery closed. Discovery was reopened in December 2013 to allow G&S to defend against Continental's Counterclaim that sounds in fraud; G&S is not being given a second chance to conduct discovery related to the claims in its Complaint. To the extent that pre-litigation loss reserves may be discoverable generally, their only usefulness at this stage of discovery on the Counterclaim would be as a basis for comparison for any change in the loss reserves during litigation. Because the Court has found that loss reserves established or adjusted during this litigation are not relevant, there is no

basis at this stage in the litigation to compel Continental to disclose pre-litigation loss reserves in the context of discovery related to the Counterclaim.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** G&S Metal Consultants, Inc.'s Motion to Compel Continental Casualty Company to Disclose Information on Loss Reserves [DE 210]. The Court extends the discovery deadline to **November 21, 2014**, solely to allow G&S to take Lon Barrick's rule 30(b)(6) deposition. In the interests of justice, the Court extends the dispositive motion deadline to **December 19, 2014**.

SO ORDERED this 24th day of October, 2014.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record