UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| G&S METAL CONSULTANTS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:09-CV-493 JD |
| | ) |
| CONTINENTAL CASUALTY COMPANY, | ) ) |
| | ) |
| Defendant. | ) |

## **OPINION AND ORDER**

This case arises from an insurance dispute. On November 29, 2007, an explosion occurred at the Manchester, Georgia plant of G&S Metal Consultants, Inc. (GSMC), an aluminum processing and recycling business. At that time, GSMC had a commercial insurance policy issued by Continental Casualty Company (Continental). GSMC believes that Continental has not fulfilled its obligations under that policy. So, in cursory fashion, it filed suit alleging breach of contract, promissory estoppel and tortious breach of the insurer's duty of good faith. [DE 5-2]. This dispute has now yielded a bevy of ripe motions (six partial motions for summary judgment, a motion for a hearing, six motions in limine and a motion to strike) and a corresponding surfeit of briefing. As a means of unraveling this web of filings, this order addresses one of these motions—Continental's Motion for Partial Summary Judgment on Plaintiff's Building and Personal Property Claim and on Promissory Estoppel [DE 223]—and strikes the remaining filings with instructions as to how the parties may refile them.

### **I. Standard of Review**

Summary judgment is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine

1

dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Once a party has made a properly-supported motion for summary judgment, the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (internal quotation marks omitted). Since the Court is evaluating a motion for partial summary judgment filed by the Defendant, it will construe all disputed facts in the light most favorable to the Plaintiff. *See Anderson*, 477 U.S. at 255 (at the summary judgment stage "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor").

## II. Facts

GSMC is an aluminum processing and recycling business. It was founded in 1995 in Wabash, Indiana and opened a second plant in Manchester, Georgia in 2007. On November 29, 2007 there was an explosion at the Manchester plant that caused several injuries, a fatality and extensive property damage. At the time of the explosion, GSMC had commercial insurance coverage through the Defendant, Continental. GSMC's policy (# C 2074910019) (the Policy) contained two separate coverage forms. One coverage form provided building and personal property coverage (the BPP Form), the other provided business income and extra expense coverage (the BIEE Form).

Four days after the explosion, representatives from Continental toured the Manchester facility to evaluate the damage. GSMC and Continental then began coverage discussions. Throughout these, GSMC claims that Continental failed to facilitate GSMC's claim and was often non-responsive. Moreover, it says that the payments Continental made (according to

GSMC: $250,000.00 on December 27, 2007; $249,000.00 on March 11, 2008; $286,555.68 on May 1, 2008; $86,663.99 on October 3, 2008; $870,041.46 on November 26, 2008 and $229,988.24 on December 2, 2009) came too late. As a result of Continental's alleged dereliction, GSMC asserts that it was driven to financial ruin, culminating in its filing for bankruptcy on June 24, 2009.

So, GSMC filed this lawsuit to recover its losses. It began as an adversary proceeding in the United States Bankruptcy Court for the Northern District of Indiana. It then came to this Court by way of a (since amended) October 19, 2009 order granting a withdrawal of reference from the bankruptcy court. [DE 2]. The main GSMC bankruptcy proceeding is now over. The bankruptcy court dismissed it after approving the sale of substantially all of GSMC's assets (except for some property in Georgia, over which Fifth Third Bank has a lien). The proceeds of that sale were dispersed to Fifth Third Bank and other secured creditors of GSMC. But, this suit continues. So, the Court now turns to adjudicating the motion before it, in which Continental moves for partial summary judgment on two issues: (1) that Continental did not breach its obligations under the building and personal property coverage form (as opposed to the BIEE Form, which is not at issue here but appears at issue in other filings) and (2) that GSMC's promissory estoppel claim fails as a matter of law.

### III. Analysis

1. Breach of Contract

To prevail in a breach of contract action, a plaintiff must present evidence of a breach of contract. *See, e.g.*, *Haegert v. Univ. of Evansville*, 977 N.E.2d 924, 937 (Ind. 2012). Continental asserts that GSMC has failed to explain how it satisfies this essential element of its claim. *See, e.g.*, [DE 279 at 6]. It has a point. While GSMC complains extensively of Continental's

3

purported misconduct, it does not cogently slot its factual allegations into a theory of breach. Nor, interestingly enough, does it claim that Continental breached any provision in the text of the BPP Form, and it expressly concedes that Continental has now fully reimbursed it for its property loss. GSMC's chief grievance appears to be that Continental did not pay what it owed under the BPP Form as quickly as it should have. To a lesser extent, GSMC also faults Continental for being non-responsive and failing to act in accord with standard insurance industry practice.

*Delayed Payments*

It makes sense to begin with the gravamen of GSMC's complaint: that Continental took too long to pay what it owed under the BPP Form. GSMC has not alleged that Continental breached any express provision in the text of that document. But even if it had, the BPP Form did not compel Continental to pay more quickly than it did. It provides that Continental will "pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and: (1) We have reached an agreement with you on the amount of loss; or (2) An appraisal award has been made." [DE 267-5 at 57]. One of these two events—an agreement or an appraisal award—must occur before the insurer has an obligation to pay. *See Travelers Prop. Cas. Co. of Am. v. Marion T, LLC*, No. 1:10-CV-1384, 2010 WL 1936165, at *5 (S.D. Ind. May 12, 2010). Here, GSMC has not presented evidence that either of these two events occurred.[1] So, Continental never had an obligation to pay under the text of the BPP Form.

---

[1] GSMC's only argument relative to the appraisal provision is that the provision is not a condition precedent to suit, so GSMC's failure to request an appraisal does not bar its claim. Continental has not argued to the contrary, though. It only argues that the absence of an appraisal means that the 30-day period to pay the claim was never triggered on that basis, and GSMC has presented no argument or evidence suggesting otherwise.

GSMC nonetheless insists that Continental had a contractual duty to pay sooner than it did. Absent an express contractual requirement, the only source of such a duty could be the implied duty of good faith. Under Indiana law, insurers have an implied contractual obligation to deal with their insureds in good faith. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 520 (Ind. 1993). The Indiana Supreme Court recognized a cause of action in tort for breach of that duty in *Erie Insurance Company v. Hickman*, but *Erie* did not abrogate the corresponding cause of action in contract. So, if GSMC could establish that Continental acted in bad faith, that could amount to a breach of the BPP Form. *Erie* provides several examples of conduct that constitutes bad faith: "(1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Id.* at 519. Since GSMC argues that Continental did not pay as quickly as it should have, that could amount to an "unfounded delay in making payment," and thus a breach of contract.

Under Indiana law, bad faith requires "evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will."[2] *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005). "Poor judgment or negligence [are not sufficient]; the additional element of conscious wrongdoing must also be present." *Colley v. Ind. Farmers Mut.*

---

[2] In some circumstances, plaintiffs must satisfy an objective requirement in addition to making this subjective showing. The objective requirement derives from *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002). In that case, the Indiana Supreme Court stated that to establish bad faith a plaintiff must prove "the insurer had knowledge that there was no legitimate basis for denying liability." This essentially contains two requirements: "an objective element (such as the lack of a reasonable basis to deny a claim) and a subjective element (such as the knowledge of the lack of a reasonable basis to deny a claim)." *Thorne v. Member Select Ins. Co.*, 899 F. Supp. 2d 820, 826 (N.D. Ind. 2012). This analysis governs where "the only dispute at issue concern[s] a good faith difference of opinion over whether a claim [is] or [is] not covered." *Magwerks*, 829 N.E.2d at 976. But the Indiana Supreme Court has held that this is not the only way to establish a bad faith claim and it has applied an exclusively subjective analysis to cases that involve issues other than an insurer's denial of an insured's claim based on a good faith coverage dispute. *Id*. Since this case involves a dispute over whether Continental has fulfilled its obligations under the BPP Form, not a good faith dispute over whether the insured suffered a covered loss, the Court will not impose an objective requirement.

*Ins. Grp.*, 691 N.E.2d 1259, 1261 (Ind. Ct. App. 1998).[3] Indiana courts have found a triable issue of fact as to the existence of such a mental state where, e.g., an insurer denied a claim despite evidence that it may have internally conceded that the insured's harm was a covered loss, *Magwerks*, 829 N.E.2d at 977, and where an insurer failed to pay a claim for five years and two expert opinions indicated that there was no reasonable basis for disputing the validity of that claim, *Nelson v. Jimison*, 634 N.E.2d 509, 512–13 (Ind. Ct. App. 1994).

GSMC tries to duck this requirement by relying on *Ind. Ins. Co. v. Plummer Power Mower & Tool Rental, Inc.*, 590 N.E.2d 1085 (Ind. Ct. App. 1992). It cites that case for the proposition that delay, whether in good or bad faith, is compensable. *Plummer*, however, discusses delayed payment in the context of damages. It holds that damages from an insurer's delay in payment, whether in good or bad faith, are compensable, even if those losses exceed policy limits. But it does not alter the subjective showing required under *Erie's* duty of good faith analysis. Nor does it alter the simple rule that, to have any damages at all, an insured must first establish a breach that caused them. *See id.* (affirming award of damages stemming from delay in payment where insurer breached policy by wrongfully denying insured's claim). So, to prevail at summary judgment on a theory that Continental breached its implied duty of good

---

[3] While the bulk of post-*Erie* cases discuss the mental state necessary to prove bad faith as a tort, these are just as relevant to interpreting the contractual duty of good faith. Bad faith is synonymous with subjective ill intent, and accordingly Indiana courts have long imposed a subjective requirement in actions for a breach of the duty of good faith in contract, as well as in tort. *See, e.g.*, *Plummer*, 590 N.E.2d at 1093 ("Proof of bad faith is defined as clear and convincing evidence which establishes the insurer had knowledge that there was no legitimate basis for denying liability"); *Wedzeb Enters., Inc. v. Aetna Life & Cas. Co.*, 570 N.E.2d 60, 63–64 (Ind. Ct. App. 1991) (evaluating an alleged breach of the duty of good faith under a contractual theory, and noting that this "is not a case where the insurer *knew* the insured had sustained a particular injury, *knew* the policy covered that particular injury, and yet failed to inform the insured of this fact") (emphasis added); *see also Oxendine v. Pub. Serv. Co. of Ind.*, 423 N.E.2d 612, 620 (Ind. Ct. App. 1980) ("The absence of good faith is bad faith. Bad faith is not simply bad judgment or negligence. Rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity. It is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will."); Steven J. Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith*, 94 Harv. L. Rev. 369, 384 (1980) (discussing the contractual duty of good faith generally and noting that "the state of mind of the discretion-exercising party is of central importance. The courts, mindful that good faith should not be used as a vehicle for judicial fiat, defer to a party who acts with no improper purpose.").

faith, GSMC must present evidence that would allow a reasonable jury to conclude that Continental acted with subjective ill will.

GSMC fails to do so. Other than making conclusory assertions that Continental acted in bad faith, it does not even attempt to argue that Continental acted with such an adverse mental state. The record does not contain facts sufficient to support such an inference either. The evidentiary epicenter of GSMC's assertion that Continental acted in bad faith is its 106-page omnibus "Examples of Continental's Pattern of Bad Faith and Undue Delay."[4] [DE 267-20]. In this, GSMC points to the various assessments of the damage caused by the explosion that Continental received. These include: (1) GSMC's own estimates of its expenses (and those prepared by its claims advisors) (e.g., [DE 267-20 at 9-18]); (2) statements prepared by Continental's accountants, Matson, Driscoll & Damico (MDD) (e.g., [DE 267-20 at 25]) and (3) estimates prepared by Ned Fortenberry (Fortenberry), an engineer retained by Continental (e.g., [DE 267-20 at 31-32]). It then contends that Continental acted in bad faith because it did not reimburse GSMC promptly following these indications of GSMC's financial harm.

But Continental's refusal to pay in response to these damage assessments does not, without more, give rise to a reasonable inference of bad faith. A reasonable insurer would have cause to investigate each of them before cutting a check. The reports prepared by GSMC reflected the insured's own calculations of damages, and thus may have skewed in its favor. The reports issued by Continental's accountants provided that they were either "for reserve purposes only" or "subject to your review of coverage. . . for advance payment consideration." [DE 267-20 at 25–26, 28]. And the estimates prepared by Continental's engineer appear to have been

---

[4] Continental filed a motion to strike [DE 258] that contests the admissibility of certain exhibits submitted by GSMC, including [DE 240-14], which is identical to [DE 267-20]. The Court need not decide that motion now, because it rules for Continental even considering the disputed evidence. But by referencing these disputed exhibits, the Court does not condone their admissibility. On the contrary, many of them are rife with hearsay. For one such example, see n. 6 below.

based (at least in part) off of uncertain numbers. Fortenberry attached a spreadsheet with three categories of invoices to one of his estimates: those that predated the explosion, those that WorldClaim (a claims adjuster hired by GSMC) acknowledged probably were not part of the explosion and those that were "probably legitimate (90% or more)." [DE 267-20 at 31]. Fortenberry also indicated that a repair estimate submitted by WorldClaim contained a $481,148.12 expense for electrical wiring which, according to Fortenberry, should have already been largely completed. *Id.* These figures hardly inspire confidence, much less warrant immediate payment. So, that Continental would have wanted to conduct its own review of GSMC's claim, rather than promptly compensating GSMC based on any of these estimates, undermines any inference of bad faith. That is consistent with Indiana law. Indiana courts have repeatedly held that insurers do not cause an unfounded delay in making payment where they take time reasonably necessary to ascertain their liability to the insured. *See, e.g.*, *Hopper v. Carey*, 810 N.E.2d 761, 766 (Ind. Ct. App. 2004); *Austin v. Globe Am. Cas. Co.*, No. 39A05-0606-CV-343, 2007 WL 925767, at *7 (Ind. Ct. App. Mar. 29, 2007); *see also Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 523–24 (7th Cir. 2008) ("The Defendant's questions about the value of the design library and requests for information about that and other matters before making more payments had a rational, factual basis and cannot be said to be in bad faith.").

*Failure to Conform to Industry Practice*

GSMC also complains that Continental acted contrary to standard industry practice by failing to share a scope of work report prepared by Fortenberry with GSMC for nine months, summarily rejecting a scope of work report prepared by WorldClaim and failing to help GSMC locate a contractor.

8

To the extent that GSMC considers this a theory of breach, though, the Court has no obligation to address it. In *Packer v. Trustees of Indiana University School of Medicine*—a case that has far too much in common with this one—the Seventh Circuit held that, on summary judgment, a plaintiff must address each element of her claims and provide specific citations to the evidence that could permit a finder of fact to find in her favor on those elements. No. 15-1095, 2015 WL 5063202 (7th Cir. Aug. 28, 2015). In that case, the Plaintiff did not do so. Regarding one of her claims, the court found that the Plaintiff "supplied no record citation for [her] statement in the relevant section of her analysis. To be fair, the factual narrative that [the Plaintiff] set forth at the outset of her memorandum did cite [to specific portions of relevant testimony]. The problem, though, is that [the Plaintiff's] abbreviated analysis of the claim made no effort to weave such evidence into a cogent argument, grounded in the case law . . . In short, [the Plaintiff's] cursory treatment of the retaliation claim was wholly insufficient and, in our view, waived." *Id.* at *6. *Packer* stands for the simple proposition that a plaintiff must coherently lay out each element of its claims with relevant supporting evidence—for example by identifying an issue, providing the applicable legal rule and analyzing the facts (complete with specific citations to the record) that could permit a finding in its favor on that issue. Where the Plaintiff fails to do so, its arguments are waived.

That is what happened here. GSMC provided nothing more than factual allegations about Continental's alleged failure to comply with standard industry practice. They appear only in the "Statement of Genuine Issues" section of GSMC's brief and are unaccompanied by legal argument. So, the Court is left to wonder how, if at all, these allegations are meant to support GSMC's claim. But it is not the Court's job to scour GSMC's brief and relevant case law to devise GSMC's arguments for it. So, any legal arguments GSMC may have had regarding

9

Continental's purported failure to act in accordance with standard industry practice are waived. *See id.* at *7.

But even if the Court were willing to construe this as an allegation of breach, it would not permit GSMC to survive summary judgment. GSMC does not cite any provision in the BPP Form that required Continental to share its scope of work report, help GSMC locate a contractor or analyze the estimates prepared by WorldClaim. It argues that this conduct contravened insurance industry custom. But the Court cannot delve into evidence of industry custom to graft new terms onto a contract. "[E]vidence of industry practice is only admissible to construe terms of art or ambiguous agreements." *Purcell v. S. Hills Invs., LLC*, 847 N.E.2d 991, 1003 (Ind. Ct. App. 2006); *see also Abbey Villas Dev. Corp. v. Site Contractors, Inc.*, 716 N.E.2d 91, 100 (Ind. Ct. App. 1999) ("Parol or extrinsic evidence is inadmissible to expand, vary, or explain the instrument unless there has been a showing of fraud, mistake, ambiguity, illegality, duress or undue influence."). Here GSMC has not identified an ambiguous term or term of art in the parties' agreement that insurance industry custom would be relevant to interpret. So, any such evidence would appear irrelevant.

Insofar as GSMC asserts that acting contrary to insurance industry practice is evidence of bad faith, that argument fails too. Continental's purported rejection of WorldClaim's scope of work report, refusal to share Fortenberry's scope of work report for nine months and failure to locate a contractor do not give rise to an inference of ill intent as opposed to, e.g., poor judgment or negligence. *See Colley*, 691 N.E.2d at 1261; *see also Michel v. Am. Family Mut. Ins. Co.*, No. 2:08 CV 331, 2010 WL 3039506, at *6 (N.D. Ind. Aug. 2, 2010) ("[C]laim mismanagement and poor judgment are not a sufficient basis to demonstrate a genuine issue of material fact on the elements of bad faith.").

Furthermore, GSMC does not provide evidence that supports these allegations. GSMC provides a single citation for the claim that "Continental failed to share its own scope of work report with G&S for nine months, and it rejected WorldClaim's estimate out of hand." [DE 266 at 10]. That citation, (which reads "GS220507, Exhibit 24," or [DE 267-24 at 1] in this order's citation convention), is one page of an email chain that says nothing about the WorldClaim estimate. Nor does it indicate that Continental withheld a report drafted by Fortenberry (who, recall, is the engineer hired by Continental). The only email that chain contains that would appear relevant to support GSMC's claim is from Joe Nalepa (the Continental representative responsible for GSMC's claim) to Chanoch (GSMC's claims representative at the time), in which Nalepa says that the report from ED&T (Fortenberry's firm), is not in electronic format, so Continental will have to either send GSMC an electronic copy or take it to the copier. Perhaps GSMC intended to cite to [DE 240-30], which is the same email chain, with the addition of an email that predates Nalepa's by nine months. That email contains a request from GSMC for the final written report "when the structural engineer has completed his work." That, of course, would not do much more for GSMC, since it does nothing to show that Nalepa did not provide the report to GSMC out of malice, or what happened in nine months between these two emails. That leaves GSMC's assertion that Continental did not help it identify a contractor, contrary to standard industry practice. But the citations that GSMC provides do not indicate that Continental had a duty to locate a contractor.[5] So, GSMC's position that Continental did not

---

[5] GSMC cites to two deposition excerpts, neither of which indicates that Continental had any obligation to locate a contractor. First, it cites to the deposition of Michael Fusco, the WorldClaim claims adjustor: [DE 267-22 at 3, 19:1-10] ("My -- we typically prepare the damage estimates based on, again, our expertise and seeing these things time and time again. And then once we have a scope agreed to, then we will meet with the client and decide if, you know, they will tell us if they have a contractor in mind. And if they have a contractor in mind, we'll obviously share that scope with that contractor. I don't believe we got to that stage in this claim.). Second, it cites to the deposition of Ned Fortenberry, Continental's structural engineer: [DE 267-23 at 5, 96:9-14 ] ("And wouldn't you say it's fairly common, is that both sides have the ability to come up with their own independent Scope of Work and

11

comply with standard insurance industry practice does not raise an issue of material fact as to whether Continental breached the BPP Form.

*Non-Responsiveness*

GSMC's laundry list of instances in which it alleges that Continental was non-responsive does not get it any further. Like the above argument, GSMC's allegations of non-responsiveness do not appear in the "Argument" section of GSMC's brief, and are unsupported by legal argument. Accordingly, GSMC has waived any argument that Continental's purported non-responsiveness amounts to breach. *Packer*, 2015 WL 5063202, at *7.

Even if it had not waived this argument, GSMC would not have prevailed. Again, GSMC does not argue that these incidents violated any provision in the BPP Form, so they could only amount to a breach were GSMC able to sculpt them into a bad faith claim. But that is flatly contradicted by existing law. Once more, the subjective element is missing. *See, e.g.*, *Westfield*, 528 F.3d at 524 ("Being slow or unresponsive is not the equivalent of 'dishonest purpose, moral obliquity, furtive design, or ill will.'") (quoting *Magwerks*, 829 N.E.2d at 977); *Colley*, 691 N.E.2d at 1261 ("the lack of a diligent investigation alone is not sufficient" to establish bad faith). One exhibit arguably goes a bit further than non-responsiveness. That is an email written by Ellen Chanoch of MJ Insurance (the GSMC claims agent), in which she states that she has "never had a carrier refuse to interact with their insured in a meeting."[6] [DE 267-20 at 70]. But

---

then they shared and then you try to come up with an agreed-upon scope? That's the way it should be, but both sides should…").

[6] This is one of many examples of inadmissible hearsay statements that GSMC offers in support of its position. GSMC does not seem to appreciate that hearsay uttered by a witness who has been deposed and who will be available for cross examination at trial is still hearsay. GSMC's arguments that this statement should be admitted under Fed. R. Evid. 803(6) or 807 fail (among other reasons) because this statement was not made under circumstances that provide a circumstantial guarantee of trustworthiness. Rather, it was made in the course of an active dispute. GSMC's argument that Chanoch's statements are non-hearsay under Fed. R. Evid. 801(d)(2)(D) also fails. That rule provides that statements "made by the party's agent or employee on a matter within the scope of that relationship and while it existed" are not hearsay. Depending on context, insurance "agents" can act as agents of the

GSMC does not provide any context that would help explain the significance of that remark. So, it is unclear what, if any, inference a jury might be able to draw from this incident. Even if GSMC had provided evidence that would permit a jury to interpret this incident adversely, a failure of disposition alone does not establish bad faith. *See Magwerks*, 829 N.E.2d at 976 (declining to extend the duty of good faith to the "manner of handling the claim").

*Further Considerations Undermining any Potential Inference of Bad Faith*

Two additional considerations suggest that the amalgam of conduct identified by GSMC (delayed payments, a failure to comply with industry custom and non-responsiveness) does not permit an inference of bad faith. First, GSMC does not contest that Continental made a series of incremental payments, the first coming less than a month after the explosion. While these may not have come as quickly as GSMC would have liked, they nevertheless demonstrate that Continental was making some effort to work with the insured. *See Westfield*, 528 F.3d at 523–24 ("Again, the fact that the Defendant paid the Plaintiff for some claims, or part of some claims, belies the allegation that the Defendant's behavior was a 'furtive design' to lead to an unfounded delay in payment.") (quoting *Magwerks*, 829 N.E.2d at 977). Second, the BPP Form provided that either party could have demanded an appraisal. Continental then would have had to pay any resulting appraisal award within 30 days. GSMC does not contest that it never demanded an

---

insurer or of the insured. *Estate of Mintz v. Conn. Gen. Life Ins. Co.*, 905 N.E.2d 994, 1001 (Ind. 2009). Here, the record indicates that Chanoch was acting as an advocate for GSMC in a position adversarial to Continental. Furthermore, Chanoch stated that her own understanding was that she was retained by GSMC to act as GSMC's agent in this dispute. [DE 272-6 at 15]. Accordingly, Chanoch's statement was not made within the scope of an existing agency relationship with Continental such that it is admissible under Fed. R. Evid. 801(d)(2)(D). Finally, GSMC's argument that this statement should be admissible under Judge Posner's concurrence in *United States v. Boyce*, 742 F.3d 792, 799 (7th Cir. 2014) is frivolous. Judge Posner's concurrence contained a policy recommendation. However well founded that recommendation may be, it did not rewrite the Federal Rules of Evidence.

appraisal, suggesting that it had at least some measure of confidence in Continental's handling of the claim. [DE 266 at 5].

Thus, viewing the evidence in the light most favorable to GSMC, there is insufficient evidence from which a reasonable jury could find bad faith such that it could find Continental violated its implied contractual duty of good faith relative to the BPP Form. Nor has GSMC presented evidence that could permit a reasonable jury to conclude that Continental breached the express terms of the BPP Form. So, the Court concludes that GSMC has not sufficiently substantiated its allegation that Continental breached the BPP Form to survive summary judgment.

2. Promissory Estoppel

That leaves promissory estoppel. In Indiana, the doctrine of promissory estoppel estops a promisor from denying the enforceability of its promise in certain circumstances. *First Nat. Bank of Logansport v. Logan Mfg. Co.*, 577 N.E.2d 949, 954 (Ind. 1991). To make out a claim of promissory estoppel, a party must establish: "(1) a promise by the promissor (2) made with the expectation that the promisee will rely thereon (3) which induces reasonable reliance by the promisee (4) of a definite and substantial nature and (5) injustice can be avoided only by enforcement of the promise." *First Nat. Bank of Logansport v. Logan Mfg. Co.*, 577 N.E.2d 949, 954 (Ind. 1991). GSMC acknowledges these elements in passing, but it makes no effort to explain how it satisfies any of them.

In its complaint, GSMC alleged: "CNA made the representation that funds used for temporary repairs would be covered with the reasonable expectation that G&S would rely on the representation . . . G&S did rely on the representation and was damaged as a result." [DE 5-2 at 6]. But GSMC never develops this theory of promissory estoppel or provides evidence to

14

support it. Rather, in its response to Continental's motion for partial summary judgment, GSMC adopts an entirely new theory of promissory estoppel and contends that it relied "on the promise of prompt payment implied by law" as discussed in *Erie*. That GSMC does not defend the theory of promissory estoppel it advances in its complaint would be reason enough to grant Continental summary judgment on this claim. *See Packer*, 2015 WL 5063202, at *7 (affirming grant of summary judgment on a "wholly unsupported" contract claim).

Even if the Court were to grant GSMC leave to amend its complaint under Rule 15(a)(2) to pursue this new theory, the claim would still fail. First, as discussed above, GSMC has not raised a genuine issue of material fact as to bad faith under *Erie*. Second, the promissory estoppel claim, as now argued by GSMC, is exactly the same as GSMC's breach of contract claim—both assert a violation of the duty to deal with the insured in good faith. This appears to stem from GSMC's misapprehension that an implied contractual duty must be enforced through a promissory estoppel claim instead of a breach of contract claim, which is not the case. Regardless, the promissory estoppel claim is now inappropriately redundant and must be dismissed. *See Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F. Supp. 2d 829, 848 (S.D. Ind. 2005).

## IV. Remaining Filings

As noted above, the present motion is one of six separate motions for summary judgment that are currently pending. The remaining motions address issues relating to coverage under the BIEE Form, the availability and extent of consequential damages and affirmative defenses and counterclaims asserted by Continental. The filings accompanying those motions span hundreds of pages (excluding exhibits), yet fail to provide the Court with basic information that is essential to the adjudication of the remaining issues in this dispute. For example, the parties do not clearly articulate which of their arguments are claims for relief (as opposed to theories of damages) or

clearly connect their theories of damages to the claims they are predicated upon.  Given the voluminous and already-unwieldy briefing, the Court does not believe that oral argument could adequately elucidate these issues or that supplemental filings are justified.  Moreover, to the extent that the parties have adequately addressed certain issues, this ruling renders much of their briefing (particularly the sections regarding damages) inapposite.

Accordingly, the Court strikes each of the remaining motions for summary judgment, the motion for oral argument and the motion to strike exhibits to the current motions.  Each party may refile a single motion for summary judgment on any remaining issues that they believe in good faith are not subject to genuine disputes of material facts.  The briefs in support of, in response and in reply to those motions may not exceed 25 pages, exclusive of the Statement of Material Facts or Statement of Genuine Disputes called for under Local Rule 56-1(a) and (b).  Furthermore, the parties' filings should address only those claims that continue to be at issue after this order: GSMC's allegation of tortious bad faith claims handling, GSMC's claim that Continental breached the BIEE Form (to the extent it asserts that as a theory of relief) and Continental's counterclaims for unjust enrichment and breach of contract (the latter apparently implicating both forms of the Policy).

In addition to the motions for summary judgment, the parties have also filed a total of six motions in limine seeking to exclude expert testimony.  However, resolving each of those motions at this point would be premature, as the motions for summary judgment do not appear to rely on the admission or exclusion of this evidence, and it is not yet clear what issues in this case will ultimately proceed to trial.  Thus, the Court strikes each of the pending motions in limine.  If the subsequent motions for summary judgment rely on the admission or exclusion of expert testimony, the parties may raise those issues in a motion to strike, pursuant to Local Rule 56-

1(e). Otherwise, after resolving the motions for summary judgment, the Court will set new deadlines for the filing of any *Daubert* motions so that those matters can be resolved in advance of trial.

## V. Conclusion

Based on the evidence GSMC has presented, a reasonable jury could not conclude that Continental breached its contractual obligations under the BPP Form or that Continental is liable to GSMC in promissory estoppel. Consequently, the Court **GRANTS** Continental's partial motion for summary judgment [DE 223]. The Court **STRIKES** the remaining pending motions with leave to refile. [DE 225, 227, 229, 231, 232, 233, 234, 235, 236, 238, 242, 258, 284]. The parties may each refile a single motion for summary judgment on any remaining issues, subject to the restrictions detailed above, by November 17, 2015. The response and reply briefs will be due within the time limits specified in Local Rule 56-1(b) and (c).

SO ORDERED.

ENTERED:  September 18, 2015

/s/ JON E. DEGUILIO
Judge
United States District Court